United States Court of Appeals,

Eleventh Circuit.

No. 94-4303.

Harold SNOWDEN, Petitioner-Appellant,

v.

Harry K. SINGLETARY, Secretary, Florida Department of Corrections, Respondent-Appellee.

Feb. 18, 1998.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-100-CIV-NESBITT), Lenore C. Nesbitt, Judge.

Before EDMONDSON, Circuit Judge, and CLARK and WELLFORD[*], Senior Circuit Judges.

EDMONDSON, Circuit Judge:

Harold Snowden ("Snowden"), a state prisoner, appeals the district court's denial of his petition for habeas corpus relief. The petition presented some unexhausted claims and some exhausted claims. Because all issues raised by Snowden in his habeas petition were either totally exhausted in state court or were already procedurally barred from further consideration in state court, we address the claims in the petition that were exhausted. We reverse the district court's denial of Snowden's petition.

*Background*

In 1996, Snowden was convicted of five counts of child abuse for acts which allegedly occurred at his home, where his wife cared for several children. Snowden was sentenced to two consecutive life terms.

Snowden appealed his conviction to the Third District Court of Appeal of Florida. That

[*]Honorable Harry W. Wellford, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

court affirmed Snowden's conviction. *See Snowden v. State,* 537 So.2d 1383 (Fla.Dist.Ct.App.1989). The Florida Supreme Court denied discretionary review. *See Snowden v. State,* 547 So.2d 1210 (Fla.1989). Snowden then filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. That motion was denied by the state trial court without an evidentiary hearing. The Third District Court of Appeal of Florida affirmed the trial court's denial of Snowden's petition for post-conviction relief. *See Snowden v. State,* 589 So.2d 911 (Fla.Dist.Ct.App.1991).

Snowden next sought post-conviction relief in federal court and filed a petition for federal habeas relief under section 2254 in the United States District Court for the Southern District of Florida. In June 1994, a magistrate judge issued a report and recommendation stating that relief should be denied. This report and recommendation was adopted by the district court, and relief was denied. Snowden appeals that decision.

*Discussion*

In this appeal and in his petition for federal habeas relief, Snowden focuses on eight claims of error, including: (1) The state trial court prohibited adequate voir dire, violating his rights to due process and an impartial jury; (2) An expert witness for the State destroyed evidence, violating his rights of due process and confrontation of the witnesses against him; (3) The trial court improperly allowed four adults to testify about alleged-child-victims' hearsay statements, violating his rights of due process and equal protection; (4) The trial court admitted expert witness testimony about the truthfulness of the child witnesses, violating due process; (5) The trial court permitted the State's expert witness to testify that Snowden's counsel was abusive to one of the children during a deposition, violating due process; (6) The trial court allowed evidence of abuse against other children, that is, similar crimes evidence, violating due process; (7) The prosecutor made improper

comments during closing argument, violating due process; and (8) The errors, taken cumulatively, violated Snowden's due process rights.[1]

To be appropriate for this court's review, Snowden must have raised these claims in state court to allow the state courts the opportunity to rule on the federal issues: the doctrine of exhaustion of state remedies.

*I. Exhaustion of State Remedies and Procedural Defaults*

In general, a federal court may not grant habeas corpus relief to a state prisoner who has not exhausted his available state remedies. 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State...."). "When the process of direct review ... comes to an end, a presumption of finality and legality attaches to the conviction.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials." *Smith v. Newsome,* 876 F.2d 1461, 1463 (11th Cir.1989) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-92, 77 L.Ed.2d 1090 [1983] ).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (citing *Picard v. Connor,* 404 U.S. 270, 275-76, 92 S.Ct. 509, 512, 30

---

[1]In Snowden's petition to the district court for relief he included these claims, along with some others. All the additional claims—trial court bias, exclusion of defense evidence, and denial of psychological reports—were either procedurally barred from federal consideration or lack merit upon which to grant relief. Thus, we do not discuss these claims.

L.Ed.2d 438 [1971] ) (internal quotation marks omitted). The Supreme Court has written these

words:

> [T]hat the federal claim must be fairly presented to the state courts .... it is not sufficient
> merely that the federal habeas applicant has been through the state courts.... Only if the state
> courts have had the first opportunity to hear the claim sought to be vindicated in a federal
> habeas proceeding does it make sense to speak of the exhaustion of state remedies.

*Picard,* 404 U.S. at 275, 92 S.Ct. at 512. *See also Duncan,* 513 U.S. at 365, 115 S.Ct. at 888

("Respondent did not apprise the state court of his claim that the evidentiary ruling of which he

complained was not only a violation of state law, but denied him the due process of law guaranteed

by the Fourteenth Amendment.").

Thus, to exhaust state remedies fully the petitioner must make the state court aware that the

claims asserted present federal constitutional issues. "It is not enough that all the facts necessary

to support the federal claim were before the state courts or that a somewhat similar state-law claim

was made." *Anderson v. Harless,* 459 U.S. 4, 5-6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations

omitted).

After examination of the record on appeal, including the trial transcript, Snowden's direct

appeal brief, Snowden's petitions for state post-conviction relief, and the district court's order, we

believe Snowden's petition for federal habeas relief is a mixed petition: some of the claims were

exhausted in the Florida state courts, while other claims were not presented to the state courts for

review.[2] A federal district court ordinarily must dismiss a "mixed" habeas petition (one which

_____

[2]Snowden properly presented to the state court the federal law issues of the jury voir dire, of
the destruction of evidence, of the expert testimony about the truthfulness of the child witnesses,
and of his ineffective assistance of trial counsel. Although Snowden did not specifically state on
direct appeal that these issues were to be reviewed under the Federal Constitution, he did provide
enough information about the claims (including cites to Supreme Court cases) to notify the state
courts that the challenges were being made on both state and federal grounds. For example, he
presented these points to the state courts:

contains both exhausted and unexhausted claims) without prejudice—allowing either resubmission

of only exhausted claims or total exhaustion. *Rose v. Lundy,* 455 U.S. 509, 519-20, 102 S.Ct. 1198,

1204, 71 L.Ed.2d 379 (1982).

But, when it is obvious that the unexhausted claims would be procedurally barred in state

court due to a state-law procedural default, we can forego the needless "judicial ping-pong" and just

treat those claims now barred by state law as no basis for federal habeas relief.[3] *See Coleman v.*

---

1. "It is apod[i]ctic that a meaningful voir dire is critical to effectuating an accused's constitutionally guaranteed right to a fair and impartial jury." Snowden's Direct Appeal Brief at 66 (citing *Rosales-Lopez v. United States,* 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 [1981] ).

2. "The Due Process Clause guarantees an accused access to relevant and material evidence necessary to prepare his defense." Snowden's Direct Appeal Brief at 43 (citing *Barnard v. Henderson,* 514 F.2d 744 [5th Cir.1975] ).

3. "By permitting improper expert testimony to bolster [the child's] credibility—a clear invasion of the jury's sole province—Mr. Snowden was denied a fair trial." Snowden's Direct Appeal Brief at 56.

4. Snowden specifically raised the issue of ineffective assistance of counsel in his post-conviction petition to the Florida state court. *See State v. Barber,* 301 So.2d 7 (Fla.1974) (ineffective assistance claim properly raised for first time in post-conviction relief petition).

Also, by raising these issues on direct appeal Snowden has exhausted his state remedies, although the issues were only raised during state collateral-relief proceedings in the context of ineffective-assistance-of-counsel contentions. *See Castille v. Peoples,* 489 U.S. 346, 349-50, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989) ("[O]nce the state courts have ruled upon a claim, it is not necessary for a petitioner "to ask the state court for collateral relief, based upon the same evidence and issues already decided by direct review.' ") (quoting *Brown v. Allen,* 344 U.S. 443, 447, 73 S.Ct. 397, 402, 97 L.Ed. 469 [1953] ).

[3]Claims Snowden failed to raise in state court have been procedurally defaulted: they are now procedurally barred from consideration in Florida courts. Because of this default, we cannot review the merit of those claims without a showing by Snowden of both cause for the default and prejudice from the alleged constitutional violation. *See Wainwright v. Sykes,* 433 U.S. 72, 89-91, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977). Snowden seems to make no argument of cause and prejudice for the unexhausted, procedurally defaulted claims. So, we will

*Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 269, 109 S.Ct. 1038, 1046-47, 103 L.Ed.2d 308 (1989) (O'Connor, J., concurring). And, in this case, where all the unexhausted claims are procedurally barred from being considered in Florida courts, it would serve no purpose to dismiss the petition for further exhaustion because review of those claims is unavailable in state courts.[4]

The district court's order, by accepting the magistrate judge's report and recommendations, concluded that most of Snowden's claims were procedurally barred under Florida state law and, thus, could not be the source of federal relief. Usually "[a] procedural default bars the consideration of the merits of an issue in federal court only when the state court itself applies the procedural default rule." *Dobbert v. Strickland,* 718 F.2d 1518, 1524 (11th Cir.1983) (citing *Ulster County Court v. Allen,* 442 U.S. 140, 152-53, 99 S.Ct. 2213, 2222, 60 L.Ed.2d 777 [1979] ); *see also Rogers v. McMullen,* 673 F.2d 1185, 1188 (11th Cir.1982) ("where "the state courts have not relied exclusively upon [a] procedural default' " federal habeas review is not prevented) (quoting *Thompson v. Estelle,* 642 F.2d 996, 998 [5th Cir.1981] ). In this case, the Florida appellate court did not apply procedural bars to those claims of Snowden which he presented to it. *Snowden v.*

not consider those claims on the merits.

[4]All alleged mistakes in the state trial court which were presented in federal court were raised in state courts in some manner. But, only the claims that were raised as federal constitutional issues before the state courts have been exhausted in the state courts. The remaining claims are unexhausted. These claims, however, cannot be further reviewed in state court because Snowden's failure to raise the constitutional issues surrounding the errors in his first post-conviction petition in the Florida courts bars him from raising these new issues in a successive petition. *See Mills v. Florida,* 684 So.2d 801, 804 n. 3 (Fla.1996); *Spaziano v. Florida,* 545 So.2d 843, 844 (Fla.1989) ("Unless petitioner shows justification for failure to raise the present issue[s] in the first petition, the second successive petition pursuant to Florida Rule of Criminal Procedure 3.850 may be dismissed as an abuse of procedure."); *Dyer v. Florida,* 655 So.2d 123, 123 (Fla.Dist.Ct.App.1995) ("Successive petitions for habeas corpus should be denied as an abuse of procedure.") (citations omitted). Snowden has alleged no justifications for his failure to raise all of his claims as federal constitutional issues.

*Florida,* 537 So.2d 1383, 1383 (Fla.Dist.Ct.App.1989) ("While we find no merit in any of the numerous points on appeal raised by Snowden, we find worthy of discussion Snowden's contention that the introduction by the State of evidence to show ... similar acts ... infringed upon his right to a fair trial...."). But we believe that the district court correctly concluded that many of the claims were procedurally barred or would effectively be barred by Snowden's failure to raise them at his first Rule 3.850 proceeding.

Federal courts may apply state rules about procedural bars to conclude that further attempts at exhaustion would be futile. This step should not be taken if there is a reasonable possibility that an exception to the procedural bar may still be available to the petitioner. *Richardson v. Turner,* 716 F.2d 1059 (4th Cir.1983). As mentioned, we believe the district court properly concluded that no reasonable possibility exists for Snowden, in state court, to raise (as federal constitutional issues) those issues which he failed to raise throughout his direct appeal and in his first state post-conviction petition.

But, about the issues of jury voir dire, destruction of evidence, improper expert testimony about credibility, and ineffective assistance of counsel, we see properly exhausted claims. Because all issues presented are either properly before the federal courts or, in the light of state procedures, now barred from our consideration, we can and will address Snowden's petition partly on the merits.

*II. The Merits of the Petition*

We need go no further than to address the claimed error of permitting an expert witness to testify about the credibility of other witnesses.

When reviewing a state court evidentiary ruling, generally federal courts "are not empowered to correct erroneous evidence rulings of state trial courts." *Boykins v. Wainwright,* 737 F.2d 1539, 1543 (11th Cir.1984) (citations omitted). "Nevertheless, when a state trial court's

evidence rulings deny a habeas petitioner fundamental constitutional protections, this [c]ourt's duty requires it to enforce the constitution's guarantees by granting the petition for a writ of habeas corpus." *Id.* at 1544. Before relief can be granted the error "must rise to the level of a denial of fundamental fairness." *Hall v. Wainwright,* 733 F.2d 766, 770 (11th Cir.1984) (quotations and citations omitted). Such fundamental unfairness violates the Due Process Clause of the Federal Constitution. *Hills v. Henderson,* 529 F.2d 397, 401 (5th Cir.1976).

A denial of fundamental fairness occurs whenever the improper evidence "is material in the sense of a crucial, critical, highly significant factor." *Osborne v. Wainwright,* 720 F.2d 1237, 1238 (11th Cir.1983). The evidence at issue in this petition is testimony by an expert witness (Dr. Miranda) that 99.5% of children tell the truth and that the expert, in his own experience with children, had not personally encountered an instance where a child had invented a lie about abuse. These statements were elicited, during the presentation of the State's case-in-chief, by prosecutor's questions which were linked to the expert's interviews with a specific child who testified at the trial—the only child who testified in this case who also was identified by the State as a victim of the crime for which Snowden was on trial. *See* Appendix.

That such evidence is improper, in both state and federal trials, can hardly be disputed. *See, e.g., United States v. Azure,* 801 F.2d 336, 340-41 (8th Cir.1986) (expert testimony about credibility of alleged-child-sexual-assault victim improperly invades province of jury, which "may well have relied on [the expert's] opinion and surrender[ed] their own common sense in weighing testimony") (internal quotation marks and citation omitted); *Tingle v. Florida,* 536 So.2d 202, 205 (Fla.1988) ("error for the state's witnesses to directly testify as to the truthfulness of the victim; .... the ultimate conclusion as to the victim's credibility always will rest with the jury"). But (and this point bears repeating) not every evidentiary error amounts to a denial of fundamental fairness.

The case against Snowden was based almost entirely upon the stories told by three, young-children witnesses. The oldest, allegedly abused child (and the oldest child witness) was 6 years old at the time of trial; the abuse had supposedly occurred, at least, two years before the trial. The only physical evidence that a child might have been abused by anyone was that one of the children had been treated for an ailment which can be transmitted sexually, but is also transmitted by other means.

And this case is not one in which the prosecution's expert's view of victim credibility was touched on only briefly at the trial. In the prosecutor's argument to the jury, he stressed the significance of the expert's opinion about the credibility of child victims of supposed sexual abuse. Over and over again, the prosecutor hit the point hard, saying this, among other things, about Dr. Miranda's trial testimony:

Dr. Miranda is a witness who is a real expert in this case.... He is a real expert....

....

He told you that out of those 1,000 kids [the 1,000 Dr. Miranda had said he had interviewed about sexual abuse], 995 of them told the truth.... That's 99.5 percent of the children.... He said in 99.5 percent of those cases it has been his experience that the children have been telling the truth....

....

... That's the opinion of Dr. Simon Miranda. 99.5 percent of the kids tell the truth....

....

[Dr. Miranda concluded] that ... there was no evidence that the girl made up the entire story....

....

... And, remember, if you don't remember anything else about Dr. Miranda's testimony, just remember two things: That he was qualified as an expert in child sexual abuse 250 times, and that it is his experience that 99.5 percent of the children who report an incident of sexual abuse are telling the truth.

The jury's opinion on the truthfulness of the children's stories went to the heart of the case. This circumstance makes Snowden—against whom there was, otherwise, very little evidence—deserving of relief.[5] *See Gregory v. North Carolina,* 900 F.2d 705, 705-06 (4th Cir.1990) (some physical evidence of abuse, but most damning evidence was erroneously admitted so habeas granted). *Cf. Davis v. Zant,* 36 F.3d 1538, 1546 (11th Cir.1994) (habeas consideration often requires a look to the evidence of guilt of the accused); *McCoy v. Newsome,* 953 F.2d 1252, 1265 (11th Cir.1992) (erroneously admitted evidence "is not crucial, critical and highly significant when other evidence of guilt is overwhelming") (internal quotes and citation omitted); *Adesiji v. Minnesota,* 854 F.2d 299, 300-01 (8th Cir.1988) (where expert opinion of general credibility of child witnesses, which expert had not personally interviewed, mentioned only once and briefly, and where substantial other evidence of child abuse, error harmless for habeas purposes). Permitting an expert to vouch forcefully for the children's credibility in this case was a "crucial, critical, highly significant factor." In addition, there was no adequate means to counter such a contention: it truly was this expert's opinion that child witnesses in sexual abuse cases tell the truth.

The district court agreed that the admission of this testimony probably violated state law, but ruled that the evidence did not rise to the level of fundamental unfairness.[6] We cannot agree.

Witness credibility is the sole province of the jury. Very rarely will a state evidentiary error

---

[5]The expert's statements were elicited on redirect examination after defense cross-examination. We believe a fair reading of the record shows the defense cross-examination focused on the general methodology for treating abused children, general behavior of abused children, and the information possessed by the expert about this child's previous interviews with other psychologists. The defense cross-examination did not directly spotlight the expert's opinion about a specific child's veracity as the redirect did. That the improper opinion—vouching for credibility—was elicited on redirect examination does not make it less a constitutional error.

[6]Although the Florida courts denied relief to Snowden, the state courts did not specifically write about expert testimony on credibility.

rise to a federal constitutional error; but given the circumstances of the trial underlying this case, we conclude that allowing expert testimony to boost the credibility of the main witness against Snowden—considering the lack of other evidence of guilt—violated his right to due process by making his criminal trial fundamentally unfair. So, we reverse the district court's decision and remand with instructions to grant Snowden's petition for relief, releasing Snowden unless the state affords him a speedy new trial.

REVERSED and REMANDED.

*APPENDIX*

*Excerpts of Redirect Examination of Dr. Miranda (by State):*

Q: Doctor, when you interviewed [the child witness] and she told you about the incident of sexual abuse, did you find any evidence in your interview that [she] was unable when she described in detail those incidences in detail that she was unable to tell fact from fantasy?

A: I did not.

Q: Did you find any evidence in your interview to indicate to you that when [the child] told you about how she was sexually abused by Grant her babysitter, did you find any evidence to indicate that [she] did not realize the significance of the statements she was making?

A: I did not.

....

Q: Okay. Doctor, in your professional experience bringing into mind that you have interviewed 1,000 kids where there has been an allegation of a sexual abuse, has it been your experience that it is common or uncommon for a child to come into an interview situation with you and make up a fantasy story about being sexually abused and give you specific details and demonstrate with specificity with anatomically correct dolls, is it common for that type of thing to

have been made up?

....

A: It is not a common experience.

Q: I'll grant you that it's possible.  Let's talk about how possible.  Is it a likely experience, is it unlikely, is it probable, is it unprobable?  Can you talk about how possible it is since we know that anything is possible?

....

A: I think that the easiest thing would be for me to answer on the basis of my experience.

Q: You may do so, sir.

A: And if we use fabrication in the strict sense of the word meaning to make up the story ... I have not encountered it but I do not consider it impossible for it to happen.

However, I have had in the cases that I have evaluated a new—and I'm talking about less than ten but maybe more in the realm of five instances that I can recall where the allegations—

Q: Five out of the thousand?

A: Yes....

R. at 7-1745-48.