[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 19, 2007
THOMAS K. KAHN
CLERK

No. 06-16021
Non-Argument Calendar

_____

D. C. Docket No. 02-00810-CV-ORL-19-DAB

JAMES CHADWICK IRWIN,

Petitioner-Appellant,

versus

JAMES R. MCDONOUGH,
BILL MCCOLLUM,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 19, 2007)**

Before DUBINA, CARNES and HULL, Circuit Judges.

PER CURIAM:

James Chadwick Irwin, a Florida prisoner, appeals the district court's order denying his 28 U.S.C. § 2254 habeas petition. After review, we affirm.

## I. BACKGROUND

**A.  State Offense**

Petitioner Irwin was arrested and charged in Florida state court with burglary of a conveyance and petit theft after the victim, Roderick DeLacerna, identified Irwin at the crime scene as the perpetrator.

At about 2:30 a.m. on December 31, 1998, the victim DeLacerna was awakened by a loud noise outside his apartment. DeLacerna looked out his bedroom window and saw an unknown man at the driver's side window of DeLacerna's car about twenty feet away. The man reached inside DeLacerna's car and then walked out of DeLacerna's range of vision approximately two or three times. DeLacerna observed the man for approximately five minutes, during which time he called 911 and waited for the police to arrive. According to DeLacerna, the man wore a green shirt and long pants, was five feet ten or eleven inches tall and had a light beard.

Upon arrival, the police confronted and detained several individuals in and near a red truck and a white truck. Petitioner Irwin, who matched DeLacerna's description of the perpetrator, was standing outside the white truck and was

2

wearing a green shirt and jeans. When police brought Irwin to DeLacerna about an hour later, DeLacerna identified Irwin as the man he had seen breaking into his car.

**B.     Motion to Suppress In-court Identification**

While waiting for his state trial to begin, Irwin and four other prisoners were placed in the jury box. Irwin and two of the other prisoners observed the prosecutor speaking to DeLacerna and nodding toward the jury box. Irwin and the prisoners believed the prosecutor pointed Irwin out to DeLacerna.

Irwin told his attorney of these events, who promptly moved to suppress DeLacerna's in-court identification. The state court held a suppression hearing, during which DeLacerna admitted that he was unable to identify Irwin until the prosecutor had pointed Irwin out and showed DeLacerna a mug shot of Irwin. However, DeLacerna stood by his identification of Irwin on the night of December 31, 1998.

Irwin argued that DeLacerna's in-court identification was tainted based on the prosecutor's actions and should be suppressed. The state court denied Irwin's motion to suppress.

**C.     State Trial**

At trial, DeLacerna's testimony about the burglary and the arrival of the police was consistent with his testimony at the suppression hearing. Specifically,

3

DeLacerna described the man he saw break into his car as five feet ten inches tall, weighing about 185 or 190 pounds, with short hair and facial hair, and wearing long pants and a green shirt. Although it was dark when the burglary occurred, DeLacerna could see his car because the parking lot was lit by street lamps. DeLacerna also stated that, before the police arrived, Irwin started to drive off in the red truck, but stopped when a white truck approached, at which point the two drivers spoke. The two trucks then pulled out of DeLacerna's range of vision, and the police arrived approximately one minute later.

DeLacerna further testified that, when he identified Irwin as the burglar on the night of the crime, he was positive that his identification was correct. DeLacerna acknowledged that he had expressed some doubt about his ability to still identify the robber on the day of the trial, but explained that this was because the crime had occurred over three months earlier.

The prosecutor then asked DeLacerna if the person who had broken into his car was in the courtroom, and Irwin renewed his objection to the identification. The state court overruled the objection, and DeLacerna identified Irwin. DeLacerna stated that he had difficulty recognizing Irwin in court because he had less facial hair. DeLacerna admitted that he did not have his glasses on when he observed the crime, but that he can see without his glasses, does not need them to

drive and had no problem seeing the individual break into his car. Finally, DeLacerna stated that the perpetrator walked normally back and forth from his car.

Deputy Brent Bagshaw, one of the officers responding to DeLacerna's 911 call, also testified at trial. When Bagshaw and another officer arrived at the apartment complex, they obtained a description of the perpetrator from the dispatcher over the radio. The officers quickly pulled into the parking lot in front of DeLacerna's building and found five individuals in and near the red and white trucks – three white males around the white truck parked one or two spots down from DeLacerna's car and a white male and a white female inside the red truck parked approximately five or six spots down from DeLacerna's car. Irwin was one of the men standing around the white truck.

Bagshaw went to DeLacerna's apartment and confirmed the description of the perpetrator and his clothing so that he could determine which detained individuals were involved. According to Bagshaw, Irwin was the only detained individual who matched the description given by DeLacerna. At trial, Bagshaw estimated that Irwin was six feet, two inches tall and weighed about 200 pounds.

Approximately twenty to thirty minutes after arriving, Bagshaw had DeLacerna look through the window of his apartment to identify the perpetrator. Bagshaw stated that DeLacerna did not hesitate in identifying Irwin. Bagshaw

5

recovered DeLacerna's stolen property from the red truck and took a formal statement from him.

After the state rested, Irwin renewed his motion to suppress DeLacerna's in-court identification. The state court denied the motion.

Irwin called Deputy Richard Santos, another officer who responded to DeLacerna's 911 call. When Santos and Bagshaw approached, Santos found Irwin in the vicinity of the passenger side of the white truck. Santos admitted, however, that it was possible that Irwin had at some time been in the red truck. Irwin was wearing jeans and a green shirt. Irwin also had a half cast on one of his legs and walked with a slight limp as a result.

In closing, Irwin's counsel argued to the jury that DeLacerna's crime-scene identification was not reliable because the perpetrator had walked normally, while Irwin had a limp due to the cast, and because Irwin was not in the red truck that DeLacerna said the perpetrator was driving. The jury convicted Irwin on both counts. The state court sentenced Irwin as a habitual felony offender to ten years' imprisonment.

## D. Direct State Appeal

Irwin appealed his conviction to the Florida Fifth District Court of Appeal. In his appeal brief, Irwin argued that the trial court erred in denying his motion to

6

suppress DeLacerna's in-court identification because it was tainted by the prosecutor's suggestive actions on the day of trial. Irwin also argued that DeLacerna's earlier crime-scene identification was unreliable. In his brief, Irwin cited both Florida state and United States Supreme Court precedent, such as Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375 (1972), and Stovall v. Denno, 388 U.S. 293, 87 S. Ct. 1967 (1967), overruled on other grounds by Griffith v. Kentucky, 479 U.S. 314, 107 S. Ct. 708 (1987), all for the proposition that to protect a defendant's due process rights, identifications that are the product of unduly suggestive procedures and are unreliable are inadmissable. The Fifth District Court of Appeal summarily affirmed Irwin's conviction and sentence.

## E.     Section 2254 Petition

Irwin filed a pro se § 2254 habeas petition raising many claims, one of which was that the state prosecutor committed prosecutorial misconduct by using an improper in-court identification procedure at Irwin's trial.[1] Irwin described the prosecutor's conduct in pointing Irwin out to DeLacerna before the trial began, as well as the facts surrounding DeLacerna's crime-scene identification, and argued

---

[1]Although Irwin's § 2254 petition raised many claims, only Irwin's claim about the in-court identification is at issue in this appeal. While Irwin argues on appeal that the crime-scene identification was not reliable, Irwin does not make a separate claim that the admission of the crime-scene identification requires a new trial, but only that the in-court identification should not be buttressed by the crime-scene identification.

7

that the procedures used were suggestive and influenced the outcome of his trial.[2]

Although Irwin labeled his in-court identification claim as "prosecutorial misconduct," Irwin's § 2254 petition does state that his Fifth, Sixth and Fourteenth Amendment rights were violated, in particular his right to a fair trial.

The district court treated Irwin's § 2254 petition as raising only a prosecutorial misconduct claim and denied that claim because Irwin had never raised it in state court.

## F.    First Appeal

This Court granted a certificate of appealability ("COA") on the issue of whether the district court erred in concluding that Irwin's prosecutorial misconduct claim was procedurally barred even though Irwin had raised this claim on direct appeal. This Court appointed Irwin counsel, who, in preparing Irwin's appeal, discovered that the federal district court judge who had denied Irwin's § 2254 petition had been one of the state judges on the panel of Florida's Fifth District Court of Appeal that affirmed Irwin's conviction and sentence on direct appeal.

Irwin's newly appointed counsel filed a Federal Rule of Civil Procedure

---

[2]In state court, both Irwin and DeLacerna testified in state court that DeLacerna was shown only Irwin during the crime-scene identification. However, Deputy Bagshaw testified that he showed DeLacerna three men at the scene. Because we affirm even assuming only Irwin was shown to DeLacerna at the scene, this disputed fact need not be resolved to address Irwin's claim.

60(b) motion for relief from the judgment in the district court, in which he argued that the district court should vacate the order denying Irwin's § 2254 petition and reassign the case to another district court judge. The district court denied the Rule 60(b) motion, stating that it lacked jurisdiction to rule on the motion because Irwin's appeal was now pending before this Court. However, the district court noted that the prior dismissal order should be vacated and the case reassigned to another judge. In light of the district court's statement, this Court remanded Irwin's case to the district court.

## G.     District Court's Second Order on § 2254 Petition

The district court vacated the prior order denying Irwin's § 2254 petition, and the case was reassigned to another district court judge. The new district court judge directed Irwin's counsel to file a supplemental memorandum of law in support of Irwin's § 2254 claims.

In the supplemental memorandum, Irwin argued that he had exhausted his prosecutorial misconduct claim by arguing on direct appeal that the state trial court erred in denying his motion to suppress DeLacerna's in-court identification. Irwin contended that his underlying claim on direct appeal was that the prosecutor engaged in an unconstitutional and unfair identification procedure, again citing cases such as Stovall and Neil that analyze identification procedures in due process

9

terms. Irwin also explained that, although his pro se § 2254 petition labeled his in-court identification claim as one for prosecutorial misconduct, the substance of the claim and the facts in support were the same as the due process claim raised in Irwin's direct appeal. The supplemental memorandum argued that Irwin's pro se § 2254 petition should be liberally construed to raise a due process claim.

The district court denied Irwin's § 2254 petition, finding, inter alia, that Irwin's prosecutorial misconduct claim had not been exhausted because he failed to raise it in state court. In a footnote, the district court's order alternatively reached the merits and found that DeLacerna's crime-scene identification of Irwin "was permissible given the totality of the circumstances," citing Neil, and that the prosecutor's conduct at Irwin's trial had not violated Irwin's right to a fair trial.[3]

This Court granted Irwin's motion for a COA on the issue of "[w]hether the trial court violated due process by allowing the victim's in-court identification of Irwin."

## II. DISCUSSION

### A. Exhaustion of State Remedies

Before bringing a § 2254 petition in federal court, the petitioner must

---

[3]Although the district court appears to have ruled on the merits of the crime-scene identification, we note that Irwin in the district court, as well as on appeal, does not raise the crime-scene identification as a separate error, but only that the crime-scene identification does not dissipate the taint of the in-court identification. See supra note 1.

exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b), (c).[4] To exhaust state remedies, the petitioner must "fairly present" his federal claims to the state court. Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888 (1995). To "fairly present" a claim, the petitioner is not required to cite "book and verse on the federal constitution." Picard v. Connor, 404 U.S. 270, 278, 92 S. Ct. 509, 513 (1971). Rather, the petitioner need only make the state court "aware that the claims asserted present federal constitutional issues." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) The petitioner nevertheless cannot just present facts to the state court that would support a federal claim or present a somewhat similar state law claim. See id. Generally, a petitioner does not "fairly present" a claim to the state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351 (2004).[5]

After reviewing Irwin's brief filed in support of his direct criminal appeal,

---

[4]Because the exhaustion issue must be resolved before we may consider the merits of Irwin's underlying claim, we read the COA to encompass this issue. See McCoy v. United States, 266 F.3d 1245, 1248 n.2 (11th Cir. 2001).

[5]Exhaustion presents a mixed question of law and fact subject to de novo review. Fox v. Kelso, 911 F.2d 563, 568 (11th Cir. 1990).

11

we conclude that Irwin "fairly presented" to the state court a claim that his due process rights were violated by the in-court identification procedures used by the prosecutor during his trial. Irwin argued to the Fifth District Court of Appeal that DeLacerna's in-court identification was tainted by the prosecutor's overly suggestive procedures and that the taint was not overcome by DeLacerna's crime-scene identification because that crime-scene identification was unreliable. In support, Irwin cited numerous Supreme Court opinions, as well as state court opinions relying upon those Supreme Court opinions, for the proposition that identifications that are made as a result of procedures that are "so unnecessarily suggestive and conducive to irreparable mistaken identification as to be unreliable" are inadmissible to protect the "defendant's constitutional due process rights." See, e.g., Gardner v. State, 530 So. 2d 404, 405 (Fla. Dist. Ct. App. 1988) (quotation marks omitted) (citing Stovall, 388 U.S. at 302, 87 S. Ct. at 1972). Thus, Irwin's direct criminal appeal brief alerted the state court to the presence of a federal due process claim. See Baldwin, 541 U.S. at 32, 124 S. Ct. at 1351.

Furthermore, Irwin's pro se § 2254 petition, construed liberally, sufficiently raises this same due process claim. Although Irwin labeled his claim as "prosecutorial misconduct," the substance of his argument in the § 2254 petition is that his due process rights were violated by the admission of DeLacerna's in-court

12

identification, which Irwin claims was tainted by the prosecutor's suggestive procedures.[6]  Therefore, we conclude that Irwin fully exhausted his claim that his due process rights were violated by the admission of DeLacerna's in-court identification and turn to whether he is entitled to relief on that claim.

## B.    Due Process Claim

We may not grant § 2254 habeas relief on claims that were previously adjudicated on the merits in state court unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).

A state court's decision is "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law; or (2) the state court confronts facts that are "materially indistinguishable" from relevant Supreme Court precedent but arrives at an opposite result from that arrived at by the Supreme Court.  See Putnam v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  A state court's decision is an "unreasonable application" of clearly established federal law if the state court either: (1) correctly identifies the legal rule from Supreme Court precedent, but unreasonably applies

_____

[6]Irwin's counseled supplemental memorandum also makes clear that Irwin is asserting in his § 2254 petition the same due process claim raised in state court.

13

the rule to the facts of the case; or (2) "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Id.

Here, Irwin does not argue that the state court's decision is "contrary to" federal law. Rather, Irwin's argument is essentially that the state court's ruling on his due process claim was an unreasonable application of the Supreme Court's precedent with regard to identifications made as a result of suggestive identification procedures.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams v. Taylor, 529 U.S. 362, 409, 120 S. Ct. 1495, 1521 (2000). Even if the federal habeas court concludes that the state court applied federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable. Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850 (2002); see also Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1256 (11th Cir. 2002) (noting that the test does not involve deciding whether this Court would have reached the same result as the state court if it had been deciding the issue in the first instance).

We thus review Supreme Court precedent as to when the admission of an

eyewitness identification constitutes a denial of due process of law. An eyewitness identification may constitute a due process violation if the identification procedures were "unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall, 388 U.S. at 302, 87 S. Ct. at 1972; see also Manson v. Brathwaite, 432 U.S. 98, 104, 97 S. Ct. 2243, 2248 (1977); Neil, 409 U.S. at 196, 93 S. Ct. at 380. The fact that the identification procedure used was suggestive, alone, does not violate due process. See Neil, 409 U.S. at 198-99, 93 S. Ct. at 382. Rather, the "central question" is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Id. at 199, 93 S. Ct. at 382. The Supreme Court has identified several factors to consider in evaluating "the likelihood of misidentification," including: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Id. at 199-200, 93 S. Ct. at 382.

We cannot say that the state court's rejection of Irwin's due process claim is objectively unreasonable in light of the foregoing Supreme Court precedent. Despite the suggestive procedures used by the prosecutor just prior to DeLacerna's

in-court identification, the identification testimony still would be admissible, under Neil, if the identification was nonetheless reliable. The state appellate court's rejection of Irwin's due process claim implicitly reflects a conclusion that, under the totality of the circumstances, DeLacerna's in-court identification was reliable. See Wright, 278 F.3d at 1257 (finding state appellate court's summary rejection of due process claim "implicitly reflect[ed] a conclusion" that a bona fide doubt as to mental competency was not raised and concluding that this implicit conclusion was not objectively unreasonable). We cannot say that this conclusion is objectively unreasonable.

First, from the safety of his apartment, DeLacerna was able to watch the perpetrator carry out the crime for five minutes and from a distance of only twenty feet. Although it was dark outside, the parking lot in which the crime occurred was lighted, which allowed DeLacerna to see. Furthermore, although DeLacerna wore glasses, he did not need them to see the events transpiring in the parking lot. In fact, DeLacerna was able to see clearly enough to describe to police the color of the perpetrator's shirt and his facial hair.

Second, the evidence indicates that DeLacerna was paying close attention to what he was observing on the night of the crime given the detail of his description and his testimony that he watched the perpetrator from the time he first saw him

until the police arrived, even as he spoke to the 911 dispatcher.

Third, both DeLacerna's crime-scene and in-court descriptions of Irwin were accurate and matched each other. DeLacerna's estimate of the perpetrator's height and weight closely matched Irwin's height and weight as Irwin reported it to Bagshaw. DeLacerna also described the perpetrator as wearing a green shirt and long pants. Santos testified that Irwin wore a green shirt and jeans on the night of the crime. Bagshaw testified that Irwin was the only man detained by police that night who matched the description given by DeLacerna. Even though Irwin was wearing a cast on his leg and walked with a slight limp and DeLacerna observed the perpetrator walking normally, in light of the accuracy of DeLacerna's description in all other respects, this does not render unreasonable the state court's rejection of Irwin's in-court identification claim.

Nor do the facts that DeLacerna saw the perpetrator driving the red truck and Deputy Santos found Irwin in the vicinity of the passenger side of the white truck render the state court's decision objectively unreasonable. The two trucks pulled out of DeLacerna's view a minute before the police arrived. As a result, DeLacerna could not see whether during that minute the perpetrator remained in the truck or got out of the truck.

Fourth, DeLacerna testified at trial that he was positive Irwin was the man he

17

saw breaking into his car. DeLacerna acknowledged having difficulty identifying Irwin just prior to trial because Irwin's appearance had changed, but stated on the stand that he was certain that Irwin was the man he saw commit the crime. Finally, DeLacerna's in-court identification occurred three months after the crime.

We note that, in addition to the <u>Neil</u> factors already discussed, at the time of DeLacerna's crime-scene identification, occurring within an hour of the crime, DeLacerna expressed no doubt that Irwin was the perpetrator. There is a dispute of fact about whether DeLacerna's crime-scene identification was a result of a show-up of only Irwin or a line up of three men. Irwin has never directly challenged the admission of the initial crime-scene identification. Instead, he has argued, and continues to argue, that the crime-scene identification could not be used to evaluate the reliability of the in-court identification because it was also the product of suggestive procedures, namely the single-man show up. Even assuming that DeLacerna was shown only one male during the crime-scene identification and that this procedure was suggestive, the state court's implicit conclusion that DeLacerna's in-court identification remained reliable is not objectively unreasonable.[7]

---

[7]This Court has upheld a show-up identification where only one individual was shown to a witness, stating that "[a]lthough show-ups are widely condemned, immediate confrontations allow identification before the suspect has altered his appearance and while the witness' memory is fresh, and permit the quick release of innocent persons. Therefore, show-ups are not

18

Finally, we note that the jury was aware that DeLacerna had doubts about his ability to identify Irwin on the day of trial until the prosecutor pointed Irwin out and showed DeLacerna a mug shot.  Under Supreme Court precedent, the fact that these points were brought out during trial can reduce the danger that Irwin's conviction was based on a misidentification.  See Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968) ("The danger that use of the [pretrial identification] technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error.").

Based on the totality of the circumstances and our consideration of the Neil factors, we conclude that it was not objectively unreasonable for the state court to find that DeLacerna's in-court identification of Irwin was reliable.  Therefore, Irwin failed to demonstrate that the state court's denial of his due process claim was an "unreasonable application of" the Supreme Court's precedent addressing the scope of due process protection from the admission of identification testimony.

Accordingly, we affirm the district court's dismissal of Irwin's § 2254 petition.

**AFFIRMED.**

---

unnecessarily suggestive unless the police aggravate the suggestiveness of the confrontation." Blanco v. Singletary, 943 F.2d 1477, 1508-09 (11th Cir. 1991).  Irwin does not claim that the police aggravated the suggestiveness of the show up.