[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12399
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cr-00141-TJC-PDB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEJANDRO ESTRADA APLESA,
a.k.a. Paco,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 23, 2017)

Before HULL, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

After a jury trial, Alejandro Aplesa was convicted of conspiracy to possess with intent to distribute and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1), (b)(1)(B), respectively.  For these offenses, Aplesa was sentenced to a total term of 60 months of imprisonment, which was the statutory minimum.  On appeal, Aplesa contends that his convictions should be overturned because the district court erroneously instructed the jury on both offenses and the government improperly vouched for the credibility of a key cooperating witness.  He challenges his sentence on the ground that the court clearly erred in determining that he did not qualify for a minor-role reduction under U.S.S.G. § 3B1.2.  After careful review, we affirm.

## I.  Jury Instructions

Aplesa argues that the district court erred in instructing the jury in two respects.  Aplesa first contends that the court omitted an essential element of the drug-conspiracy charge—that the object of the conspiracy was to possess *with intent to distribute* cocaine, and not just to possess cocaine—and therefore constructively amended the indictment by broadening the possible bases for conviction beyond what was alleged in the indictment.  Second, he argues that the court's instruction on aiding-and-abetting liability is inconsistent with the Supreme Court's decision in *Rosemond v. United States*, 134 S. Ct. 1240 (2014).

We ordinarily review jury instructions *de novo* "to determine whether the instructions misstated the law or misled the jury to the prejudice of the objecting party." *United States v. Felts*, 579 F.3d 1341, 1342 (11th Cir. 2009). We will not reverse a conviction because of an erroneous instruction unless we are "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Id.* at 1342–43 (quotation marks omitted). We evaluate the instruction as a whole and in the context of the entire trial. *United States v. Seabrooks*, 839 F.3d 1326, 1333 (11th Cir. 2016), *petition for cert. filed*, (U.S. Feb. 16, 2017) (No. 16-8072).

Challenges to jury instructions that are raised for the first time on appeal, however, are reviewed for plain error only. *United States v. Madden*, 733 F.3d 1314, 1322–23 (11th Cir. 2013) (holding that plain-error review applies "where the defendant fails to object to a constructive amendment"); *United States v. Schlei*, 122 F.3d 944, 973 (11th Cir. 1997). "An error is plain if it is obvious and clear under current law." *United States v. Eckhardt*, 466 F.3d 938, 948 (11th Cir. 2006). Unless the explicit language of a statute or rule specifically resolves an issue, there can be no plain error without precedent from the Supreme Court or this Court directly resolving the issue. *United States v. Hesser*, 800 F.3d 1310, 1325 (11th Cir. 2015).

When a party "induces" or "invites" the district court to make an error, the

3

doctrine of invited error precludes the party from seeking review of that error on appeal, even if plain error would result. *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005). While the mere failure to object to jury instructions does not constitute invited error, *United States Dortch*, 696 F.3d 1104, 1112 (11th Cir. 2012), a party invites error by indicating that proposed jury instructions are acceptable, *Silvestri*, 409 F.3d at 1337. *See United States v. Frank*, 599 F.3d 1221, 1240 (11th Cir. 2010) ("[W]hen a party agrees with a court's proposed instructions, the doctrine of invited error applies, meaning that review is waived even if plain error would result.").

## A.    Drug-conspiracy Instruction

This Circuit's pattern instruction for a drug-conspiracy offense under 21 U.S.C. § 846 lists the elements of that crime as follows:

> (1) two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess or import [substance];
> (2) the Defendant, knew the unlawful purpose of the plan and willfully joined in it; and
> (3) the object of the unlawful plan was to [possess with the intent to distribute] [import] more than [threshold] of [substance].

11th Cir. Pattern Crim. Jury Instructions (Criminal) Instruction O100 (2015) (alteration in original). Commentary to this instruction states that "if the bracketed language in this instruction concerning weights is made a part of the overall instructions, followed by use of the special verdict form below, then the Third element of the instructions defining the offense should be deleted." *Id.*

4

At the charge conference, the district court stated that, consistent with commentary to the pattern § 846 instruction, it would remove a reference to the third element because the issue of weight was discussed later in the charge and on the verdict form.[1]  Neither party objected to the court's proposal.  When the court instructed the jury, it omitted the third element—that the "the object of the unlawful plan" was to possess with intent to distribute a quantity of cocaine.  The court also instructed the jurors that they must "unanimously agree on the weight of the cocaine the defendant possessed and specify the amount on the verdict form."

Shortly after the jury retired to begin its deliberations, the district court on its own initiative raised the issue that Aplesa advances on appeal.  The court noted that the instruction "just says a common unlawful plan to possess cocaine" and not "to possess cocaine with intent to distribute."   But the court expressed its inclination to "stay with the pattern [instruction] . . . unless somebody thinks differently."  Asked for their input, both the government and Aplesa requested that the court stay with the pattern instruction.

Now, however, Aplesa contends that the district court plainly erred by failing to instruct the jury that it was required to find that the object of the conspiracy was "to possess cocaine with intent to distribute."  We conclude that

---

[1] In contrast to the special verdict form in the commentary, however, the verdict form used at trial referred only generally to the "amount of the cocaine involved in the offense charged in Count One."  The special verdict form in the commentary specifically requires the jury to find the amount that the defendant "distributed," "possessed with intent to distribute," or "conspired to possess with intent to distribute."

5

Aplesa has waived review of the drug-conspiracy instruction because he agreed to the court's instruction and thereby invited the alleged error of which he complains. *See Frank*, 599 F.3d at 1240; *Silverstri*, 409 F.3d at 1337.

Aplesa's argument for why invited error does not apply here is unconvincing. He admits that his counsel agreed to the "pattern instruction" and that such agreement may constitute invited error. But, he contends, the district court did not actually use the pattern instruction when it omitted the third element of the charge, so by agreeing to the pattern instruction he "certainly did not invite the district court not to use the pattern instruction." Aplesa's argument, however, wholly ignores the context of his agreement to the "pattern instruction."

The district court, correctly or not, characterized the instruction that it gave to the jury as the "pattern instruction." So when the court asked the parties whether they wanted to "*stay* with the pattern [instruction]" or to include additional language relating to the object of the conspiracy, the court clearly was referring to the instruction that had just been given. By affirmatively requesting that the court stay with the "pattern instruction," Aplesa agreed with the court's decision not to supplement the instruction with additional language relating to the object of the conspiracy. In other words, he agreed to an instruction which omitted the language he now claims should have been included. This amounts to invited error. Accordingly, Aplesa has waived his challenge to the drug-conspiracy instruction.

6

## B.    *Aiding and Abetting Instruction*

Next, Aplesa argues that the district court erred by instructing the jury on aiding-and-abetting liability.  Under 18 U.S.C. § 2, a person who "aids" or "abets" the commission of a crime is "punishable as a principal."  The court instructed the jury as follows:

> It's possible to prove the defendant guilty of a crime even without evidence that the defendant personally performed every act charged.
> Ordinarily, any act a person can do may be done by directing another person, or "agent."  Or it may be done by acting with or under the direction of others.
> A defendant "aids and abets" a person if the defendant intentionally joins with the person to commit a crime.
> A defendant is criminally responsible for the acts of another person if the defendant aids and abets the other person.  A defendant is also responsible if the defendant willfully directs or authorizes the acts of an agent, employee, or other associate.  But finding that a defendant is criminally responsible for the acts of another person requires proof that the defendant intentionally associated with or participated in the crime, not just proof that the defendant was simply present at the scene of a crime or knew about it.
> In other words, you must find beyond a reasonable doubt that the defendant was a willful participant and not merely a knowing spectator.

Aplesa argues that this instruction, which is this Circuit's pattern instruction, is "no longer accurate" in light of *Rosemond* for two reasons: (1) it does not require the jury to find an act in furtherance of the crime; (2) it permits the jury to convict based on mere association with a criminal venture.  We disagree.

In *Rosemond*, the Supreme Court resolved "the Circuit conflict over what it takes to aid and abet a § 924(c) offense."  *Rosemond*, 134 S. Ct. at 1245, 1249.

7

The Court began its opinion by reviewing "basics" about aiding-and-abetting liability under § 2, explaining that, "[a]s a common law, a person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Id.* at 1245. The Court explained that a defendant intends to aid an offense's commission if he "actively participates in [the offense] knowing its extent and character." *Id.* at 1249. Applying these principles to the context of § 924(c), the Court stated that "[a]n active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun." *Id.* And that knowledge, the Court held, must be "advance knowledge"—"knowledge that enables him to make the relevant legal (and indeed, moral) choice." *Id.* That means "knowledge at a time the accomplice can do something with it—most notably, opt to walk away." *Id.* at 1249–50.

Aplesa's reliance on *Rosemond* is misplaced. *Rosemond* did not purport to change the law of aiding and abetting generally, only to clarify its application to a § 924(c) firearm offense. Since Aplesa's case does not involve a conviction under § 924(c), *Rosemond* has no direct application here.

Moreover, the parts of *Rosemond* on which Aplesa relies are wholly consistent with the well-established law of this Circuit. Aplesa cites *Rosemond*'s formulation of the two requirements for aiding-and-abetting liability, but our

8

precedent has long made clear "[a]iding and abetting has two components: [a]n act on the part of a defendant which contributes to the execution of a crime and the intent to aid its commission." *United States v. Brantley*, 733 F.2d 1429, 1434 (11th Cir. 1984) (internal quotation marks omitted) (second alteration in original); *see also United States v. Pareja*, 876 F.2d 1567, 1568 & n.10 (11th Cir. 1989) (collecting cases and noting that the test is sometimes stated with three elements).

Aplesa also cites *Rosemond*'s statement of the "canonical formulation" of the intent requirement, which is derived from an opinion by Judge Learned Hand in 1938. *See Rosemond*, 134 S. Ct. at 1348 ("To aid and abet a crime, a defendant must not just in some sort associate himself with the venture, but also participate in it as in something that he wishes to bring about and seek by his action to make it succeed.") (internal quotation marks omitted). But we have never held that it is enough for the government to prove that the defendant "in some sort associate[d] himself with the venture." Rather, the government must prove that the defendant had the "criminal intent that the undertaking be successfully completed." *United States v. Smith*, 546 F.2d 1275, 1285 (5th Cir. 1977).[2] That requires proof that the defendant "shared in the criminal intent of the principal" and "participat[ed] in the criminal act in furtherance of the common design." *Id.* at 1284 (citing and expanding upon Judge Learned Hand's formulation).

---

[2] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

Given our long-standing precedent, it cannot be that the pattern instruction is "no longer accurate" in light of *Rosemond* in the ways advanced by Aplesa. If the pattern instruction is erroneous after *Rosemond*, it was erroneous before it. But Aplesa relies solely upon *Rosemond*. And we have approved substantially similar instructions as those given by the district court in this case. *See United States v. Broadwell*, 870 F.2d 594, 607 n.32 (11th Cir. 1989). In the absence of any controlling authority, Aplesa cannot establish a "plain" error in the instruction. *See Hesser*, 800 F.3d at 1325.

We also cannot conclude that the instruction, taken as a whole, prejudiced Aplesa's substantial rights, even if isolated clauses are "technically imperfect[] or otherwise subject to criticism." *Seabrooks*, 839 F.3d at 1333 (quotation marks omitted). The instruction adequately conveyed the requirements for criminal liability under 18 U.S.C. § 2. It stated that Aplesa was guilty of aiding and abetting if he "intentionally join[ed]" with another person "to commit a crime," and that the jury was required to find that he was a "willful participant" (that he "intentionally associated with or participated in the crime") and "not merely a knowing spectator" (that he was "simply present at the scene of a crime or knew about it").

In the context of the trial, the instruction conveyed that Aplesa could not be found guilty of aiding and abetting the possession with intent to distribute cocaine

10

simply because he was driving a car in which cocaine was found, even if he knew about the cocaine.  Rather, Aplesa must have been a "willful participant" in the cocaine delivery, which implies that he knew about the delivery and acted with the intent to aid its commission.  Viewing the instruction in light of the trial as a whole, we are not "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations."  *Felts*, 579 F.3d at 1342–43.

For these reasons, the district court did not plainly err in instructing the jury on aiding-and-abetting liability.

## II.  Credibility Vouching

Aplesa next argues that the government impermissibly vouched for the credibility of Emma Abarca-Valdovinos, a cooperating witness.  Abarca-Valdovinos was a passenger in the car Aplesa was driving when it was pulled over by law enforcement based on a tip that the car was involved in a cocaine delivery.  Officers conducted a traffic stop and, during the stop, a K-9 alerted to the presence of narcotics.  A search of the vehicle revealed three kilograms of cocaine in a blue tote bag under the driver's seat.

Abarca-Valdovinos entered into a plea agreement with the government and testified against Aplesa at trial.  In her trial testimony, Abarca-Valdovinos explained that the organizer of the cocaine deal, Alejandro ("Alex") Abarca, was her nephew.  Alex, in Aplesa's presence, had asked her to accompany Aplesa to

11

deliver three kilograms of cocaine.  Abarca-Valdovinos stated that Aplesa gave her the blue tote bag later found in the car.

On direct examination, Abarca-Valdovinos admitted that she initially lied to law enforcement, primarily about her nephew Alex's involvement in the cocaine delivery.  Defense counsel thoroughly questioned her about the false statements on cross-examination.  She said that she lied about her nephew Alex's involvement, in violation of her plea agreement, because she wanted to protect him.

Later, the government called as a witness Officer Michael Kelly, a Drug Enforcement Agency task force officer who had interviewed Abarca-Valdovinos several times after her arrest.  Kelly testified that, based on his experience as a law-enforcement officer, cooperating witnesses often initially lie when speaking to law enforcement for reasons of self-preservation, protection of others, and lack of trust.  During closing arguments, the prosecutor in rebuttal referenced Kelly's testimony when discussing the factors the jury should consider in assessing Abarca-Valvodinos's credibility.

Aplesa contends that Kelly's testimony and the prosecutor's argument amount to impermissible bolstering of "the credibility of the only witness who testified that [Aplesa] knew about the drugs."  He asserts that the testimony and argument invaded the province of the jury and violated his right to a fair trial.

Because Aplesa did not lodge a contemporaneous objection on these

12

grounds either when Kelly's testimony was elicited or during closing arguments, we review for plain error only. *See United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007) ("[I]t is well-settled that where, as here, a defendant fails to preserve an evidentiary ruling by contemporaneously objecting, our review is only for plain error."); *United States v. Eyster*, 948 F.2d 1196, 1206 & n.14 (11th Cir. 1991) ("Where the defendant does *not* object to comments made by the prosecution at trial, the standard of review is plain error.").

The Federal Rules of Evidence preclude a witness from testifying as to the credibility of another witness. *United States v. Schmitz*, 634 F.3d 1247, 1268–69 (11th Cir. 2011); *United States v. Henderson*, 409 F.3d 1293, 1299 (11th Cir. 2005). Witness credibility is the sole province of the jury. *Id*. Therefore, a witness is not permitted to invade the jury's province by testifying "that another witness was truthful or not on a specific occasion." *Schmitz*, 634 F.3d at 1268. Also, we have indicated that it "might be improper" for the government "to use [a] line of questioning as an indirect way of bolstering [a witness's] credibility or attacking that of [the defendant]." *See Henderson*, 409 F.3d at 1299.

Aplesa relies on our decision in *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998) (28 U.S.C. § 2254 case). In that case, we held that an expert witness's testimony bolstering the credibility of the victim was improper and denied the petitioner due process in a child sexual-abuse case. *Id.* at 737–38. There, the

13

expert had testified that 99.5% of children tell the truth and that he, in his own experience with children, had not encountered an instance where a child had invented a lie about abuse. *Id.* at 737. We determined that the credibility-bolstering testimony constituted a denial of fundamental fairness because the case was based almost entirely upon the testimony of the victim and two other children, without any significant physical evidence, and the prosecutor relied heavily upon the credibility testimony in closing argument. *Id.*

Here, Kelly's testimony arguably amounted to improper bolstering of Abarca-Valdovinos's credibility. Kelly testified that cooperating witnesses often initially lie to law enforcement for various reasons, including to protect others. Although Kelly did not directly comment on Abarca-Valdovinos's credibility, the clear import of his testimony was that she was telling the truth at trial. *See Henderson*, 409 F.3d at 1299. Indeed, the government on appeal does not identify an alternative purpose for Kelly's testimony. Accordingly, we assume that Kelly's testimony, like the expert's testimony in *Snowden*, invaded the province of the jury on the issue of Abarca-Valdovinos's credibility and was improperly admitted.

Nevertheless, Aplesa has not shown that the error, even if plain, affected his substantial rights. *See Turner*, 474 F.3d at 1276 (stating that defendants bear the burden of establishing the third prong of plain-error review). For an error to affect a substantial right of a party, it must "have a 'substantial influence' on the outcome

14

of a case or leave 'grave doubt' as to whether [it] affected the outcome of a case." *Id.* (quoting *United States v. Frazier*, 387 F.3d 1244, 1268 n.20 (11th Cir. 2004) (*en banc*)).

Here, we do not have any serious doubt that Kelly's testimony or the prosecutor's comment referencing that testimony did not affect the outcome of the case. Kelly's testimony about the credibility of cooperating witnesses was touched on only briefly at the trial. *Cf. Snowden*, 135 F.3d at 738. Far from "stressing the significance" of the challenged testimony, as the prosecutor did in *Snowden*, the prosecutor in this case referenced it just once in rebuttal when discussing the various factors the jury should consider when evaluating Abarca-Valdovinos's credibility. *See id.* And Kelly did not directly offer a judgment about her credibility or the credibility of cooperating witnesses generally, so there was little danger that the jury would "substitute [Kelly's] judgment about [Abarca-Valdovinos's] credibility for [its own] through the contested testimony." *See Henderson*, 409 F.3d at 1299. In short, we do not believe Kelly's testimony and the prosecutor's brief reference to it swayed jurors' assessment of Abarca-Valdovinos's credibility.

Aplesa argues that the error was prejudicial because Abarca-Valdovinos was "the only witness who testified that Mr. Aplesa knew about the drugs before getting into the car." But the government's case did not rise or fall on Abarca-

15

Valdovinos's credibility.  Significantly, the government introduced a recorded conversation, with an accompanying transcript, between Aplesa and Abarca-Valdovinos in the back of a patrol car while the police were conducting the search that revealed the cocaine.  The transcript reflects that Aplesa knew the exact amount of cocaine, that trafficking in cocaine carries high penalties, and that Alex previously had served time for trafficking cocaine.  Further, Aplesa told Abarca-Valdovinos during that conversation exactly where he placed the cocaine in the car, they speculated on what went wrong, and then they attempted to concoct an innocent story about why they were driving in a car with three kilograms of cocaine.  Besides providing strong evidence of guilt, the recording and transcript also undermined the plausibility of Aplesa's testimony that he learned of the cocaine only after he began driving, supposedly to take Abarca-Valdovinos to get money from a friend.

Additionally, by testifying in his defense, Aplesa ran "a substantial risk of bolstering the Government's case."  *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995).  "[W]hen a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true."  *Id.* (internal quotation marks omitted).  And "a statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt."  *Id.* (emphasis in original).

16

Here, in light of the recording of Aplesa's conversation with Abarca-Valdovinos about the cocaine, as well as Aplesa's testimony, which the jury was free to use as substantive evidence against him, any error in admitting Kelly's testimony did not prejudice him. *See Turner*, 474 F.3d at 1276.

## III.

Finally, Aplesa argues that the district court erred by refusing to grant a minor-role reduction under U.S.S.G. § 3B1.2. Section 3B1.2 permits a two-level decrease to the defendant's offense level when he had a minor role in the offense. U.S.S.G. § 3B1.2. The district court's determination of a defendant's mitigating role for guideline-calculation purposes is a fact finding reviewed for clear error, which the defendant bears the burden of proving. *United States v. DeVaron*, 175 F.3d 930, 937 (11th Cir. 1999) (*en banc*).

We need not address an alleged error in guideline calculations when the defendant correctly receives a statutory minimum sentence, because even if error occurred, it is harmless. *See United States v. Raad*, 406 F.3d 1322, 1322 n.1 (11th Cir. 2005); *see also United States v. Westry*, 524 F.3d 1198, 1222 (11th Cir. 2008).

Here, because Aplesa received the mandatory minimum sentence, any error in calculating his guideline range is harmless. *See Raad*, 406 F.3d at 1322 n.1. Therefore, we do not address the merits of Aplesa's arguments concerning the denial of his request for a minor-role reduction.

17

**AFFIRMED.**