649 So.2d 1355 (1994)
James HALLBERG, Petitioner,
v.
STATE of Florida, Respondent.
No. 82189.
Supreme Court of Florida.
October 27, 1994.
Robert L. Doyel, Bartow, for petitioner.
Robert A. Butterworth, Atty. Gen., and Robert J. Krauss, Asst. Atty. Gen., Chief of Crim. Law, and Susan D. Dunlevy, Asst. Atty. Gen., Tampa, for respondent.
OVERTON, Justice.
This is a petition to review Hallberg v. State, 621 So.2d 693 (Fla. 2d DCA 1993), in which the district court affirmed James Hallberg's convictions on five counts of committing a lewd act upon a child and three counts of engaging a child in sexual activity by a person in a position of familial or custodial authority. The issue in this case concerns the interpretation and application of the statutory term "person who stands in a position of familial or custodial authority to a child," under section 794.041, Florida Statutes (1987). We find conflict with Coleman v. State, 485 So.2d 1342 (Fla. 1st DCA 1986), and have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
While we approve Hallberg's convictions on the five counts of committing a lewd act upon a child, we find that we must quash the district court's decision to the extent that it affirms Hallberg's conviction on the three counts of engaging a child in sexual activity by a person in a position of familial or custodial authority under section 794.041 because we find that a teacher, without any teaching responsibility or extracurricular activity supervisory authority over a child during a summer recess, is not in a position of custodial authority.
The record reflects that, during the regular school year, James Hallberg was a junior high school teacher for an honors class in which the victim, S.S., was enrolled and that he was also the sponsor of a school club in which S.S. was a member. During the school year ending in May 1988, while S.S. was in *1356 the eighth grade, Hallberg and S.S. developed a close personal relationship.
In June 1988, after school had recessed for the summer and just prior to S.S.'s fourteenth birthday, Hallberg went to S.S.'s home, ostensibly to give her some materials to review in anticipation of the upcoming school year. S.S. testified that Hallberg came to her house seven to ten times that summer and that on those occasions he fondled her breasts each time and fondled and penetrated her vaginal area with his fingers on all but the first visit. S.S. testified that on the last visit that summer Hallberg forced her to perform oral sex on him after which he then performed oral sex on her. This particular visit ended with Hallberg having intercourse with S.S. All of the above described visits took place when S.S.'s parents were not at home. It is undisputed that these events did not occur during the school year and that they did not occur in connection with Hallberg's assigned teaching responsibilities or a recognized extracurricular event. Further, S.S.'s parents were generally aware that this teacher wanted S.S. to help him with a history project during the summer, but Hallberg's visits were not scheduled with the parents' knowledge or consent and he appeared at the house and entered when only S.S. was home.
Based on these acts, Hallberg was convicted on five counts of committing a lewd act upon a child, section 800.04, Florida Statutes (1987)[1], and three counts of engaging a child in sexual activity by a person in a position of familial or custodial authority. § 794.041(2)(b), Fla. Stat. (1987).[2] Hallberg was sentenced to ten years for each of the lewd act counts and twenty-seven years for each of the sexual activity by a custodial authority counts, all to run concurrently. Hallberg appealed to the Second District Court of Appeal and raised numerous issues concerning his convictions and sentences. The district court held that none of the issues concerning Hallberg's convictions would entitle him to relief and affirmed his convictions, but remanded Hallberg's sentences for reconsideration and resentencing based on an error in the guidelines scoresheet.
Hallberg raises five issues before this Court, specifically that: (1) Hallberg did not stand in a familial or custodial relationship to the victim; (2) the three counts of lewd act on a child are lesser included offenses of the three counts of engaging a child in sexual activity so that multiple punishments were imposed on Hallberg, resulting in a violation of the double jeopardy clause; (3) the convictions should be reversed for denial of the requested lesser offense instructions; (4) the testimony of the alleged victim is insufficient to support the jury verdict; and (5) it was reversible error to deny Hallberg's motion for a new trial based on newly discovered evidence. We find that issues (3), (4), and (5) were properly resolved by the district court and we approve Hallberg's five convictions of lewd acts. Based on our resolution of the first issue, we need not address the double jeopardy issue.
*1357 The principal issue on appeal is whether Hallberg was in a position of "familial or custodial authority" to this child. The district court took a broad view of the term "custodial," finding that "a school teacher stands in a position of custodial authority to a child who is a student of the teacher," noting that, in its view, "it is the position occupied that is the essential element of the offense rather than the exercise of authority pursuant to the position occupied." Hallberg, 621 So.2d at 703. The fact that this took place during a summer recess was not, in the view of the majority, a controlling factor. Judge Altenbernd dissented, concluding that a jury was not authorized to find that Hallberg stood in a position of custodial authority under the circumstances of this case.
At the outset, it is important to note that the State concedes that Hallberg was not in a position of "familial" authority; further, it is important to note that the events did not occur during the school year or on school premises; nor did they occur in connection with activities of a recognized teaching or extracurricular event. Hallberg in this instance went to S.S.'s home after summer vacation had begun. The State raises three arguments to support its position that Hallberg was in a position of custodial authority over S.S. at the time of the offenses. First, the State argues that, based on his status as S.S.'s teacher, Hallberg was her custodian at the time of the incidents, reasoning that teachers stand, to a limited extent, in loco parentis to their students and are legally responsible for their welfare; second, the State contends that S.S.'s parents consented to Hallberg's visits and thus vested him with custodial authority over S.S.; and, third, the State, relying on Collins v. State, 496 So.2d 997 (Fla. 5th DCA 1986), review denied, 506 So.2d 1040 (Fla. 1987), argues that the close relationship between Hallberg and S.S. places Hallberg in a custodial status. We reject these arguments and find that teachers are not, by reason of their chosen profession, custodians of their students at all times, particularly when school is recessed for the summer. We agree with the following analysis by Judge Altenbernd:
These events did not occur during the school year or on school premises. They did not occur in connection with the activities of a recognized extracurricular event such as band or drama club. Mr. Hallberg went to the home of S.S. in the middle of summer vacation. Although the parents of S.S. were generally aware that this man wanted S.S. to help him with a history project during the summer, these visits were not scheduled with her parents' knowledge or consent. He simply showed up at the front door with a textbook and talked his way inside the house when only S.S. was at home.
A "custodian" is someone who has custody of another. See Webster's Third New International Dictionary 559 (1986). "Custody" connotes a duty or obligation to care for the other. Concerning a child, it usually implies that the person has some responsibilities in loco parentis. I admit that, in some situations, school authorities have been held to stand in loco parentis to their students. See, e.g., Rupp v. Bryant, 417 So.2d 658 (Fla. 1982) (because principal and teacher partially stand in place of student's parents, they had duty to protect student from injuries occurring off school grounds but during hazing by school club where principal and teacher knew of club's propensity for violating school board rules regarding extent of club activities); Nelson v. State, 319 So.2d 154 (Fla. 2d DCA 1975) (school officials have responsibility for safety and welfare of students while on school grounds and under their supervision and charge; thus, doctrine of in loco parentis allows school personnel to search student on reasonable suspicion that student is or was involved in criminal activity). Employing a strict construction of section 794.041(2), however, I cannot agree that Mr. Hallberg's status as a teacher created a jury question when these liaisons, however reprehensible, were so far removed from both the time and place of his responsibilities as a teacher.
Hallberg, 621 So.2d at 705-06 (Altenbernd, J., concurring in part and dissenting in part). It is clear S.S.'s parents did not place Hallberg in custodial control and authority over *1358 their daughter.[3] Further, we also reject the contention that the Fifth District's decision in Collins controls in this instance. That case is distinguishable because the mother had placed the minor child in the care of the defendant. That was not the situation in this instance. We agree with Judge Altenbernd that the term "custodial," absent a statutory definition, must be construed in accordance with the commonly understood definition as one having custody and control of another. The broad definition given to the term by the district court is not such that a person would know that he had custody of another in the sense that he would violate that part of section 794.041(2)(b). This is a criminal statute and, consequently, we are mandated by section 775.021 to construe the term strictly and "when the language is susceptible of differing constructions, it shall be construed most favorably to the accused."
Accordingly, we approve that portion of the district court's decision that affirmed Hallberg's five convictions of committing a lewd act upon a child under section 800.04, but quash the district court's decision insofar as it affirmed the three counts of sexual activity by a person in custodial authority and remand for further directions to the trial court consistent with this opinion.
It is so ordered.
GRIMES, C.J., and KOGAN, J., and McDONALD, Senior Justice, concur.
SHAW, J., concurs in part and dissents in part with an opinion, in which HARDING, J., concurs.
SHAW, Justice, concurring in part, dissenting in part.
I disagree with the majority's holding that section 794.041, Florida Statutes (1987), applies only to "one having custody or control of another." The plain language of the statute says otherwise  that it applies to "[a]ny person who stands in a position of ... custodial authority to a child." (Emphasis added.) The record in the present case shows clearly that Hallberg stood in a position of custodial authority to thirteen-year-old S.S.  he was her teacher, advisor, and "mentor"  at the time he forced her to have sex with him. She acceded tearfully, out of fear, because of the position he occupied. Hallberg, in my opinion, could not have committed a more blatant violation of the statute.

I. FACTS
The facts are set out extensively in the district court opinion:
Appellant was a junior high school American History teacher. In the 1987-1988 school year, appellant had then thirteen-year-old S.S. as one of his students in his eighth grade honors American History class. S.S. was also a member of the E-team, a group of about five junior high students who competed with students from other schools mostly on the subject of economics. Appellant was the teacher-counselor for the E-team. During the 1987-1988 school year, appellant and S.S. began to develop a close personal relationship. They exchanged cards and gifts on special occasions. Appellant often drove S.S. home after school and after E-team events. S.S. testified that appellant discussed his marital problems with her and offered her encouragement and advice in matters regarding school and her family. S.S. also testified that in the spring of 1988 their relationship grew more intensely personal and began to involve physical contact both at school and away from school. S.S. testified that appellant told her he loved her and wanted to marry her when she graduated from high school. She testified he would insist that she come by his classroom nearly daily during school hours when he was alone, and that behind his locked classroom door he began to kiss her and fondle her breasts and vaginal areas. She testified she did these things with appellant because she "was afraid of him." S.S. testified: "Since the first time he kissed me, he would tell me that if I ever told anyone he would have to do something he'd regret, and I took that as a threat."
*1359 As the end of the school year approached in the spring of 1988, S.S. was scheduled to again have appellant as her history teacher for the next school year, her ninth grade year. The junior high school where appellant taught and in which S.S. was a student had not only the regular academic classes and the honors classes for more gifted students, but it also had "Alpha" classes, a more advanced type of honors class. Appellant was scheduled to teach an Alpha history class during the 1988-1989 school year, and S.S. was scheduled to be one of his students. Appellant had never previously taught an Alpha class. S.S. testified that as the 1987-1988 school year (her eighth grade) drew to a close:
Sometime in May he [appellant] approached me and told me he couldn't go the entire summer without seeing me, and I was going to have him again the next year because he was going to be teaching Alpha history and he had never taught that class before. And he told me that since I'd been in Alpha he wanted me to help prepare  help him prepare for the class.
S.S. testified that in order to carry out that plan, shortly after school was out in June 1988, appellant arranged to give her the book they would be using the next year in the Alpha history class. She testified he wanted her to look over the book during the summer recess to think of projects and other work they would be able to do in the class. She testified that several weeks after school was out appellant brought the text material to her home where she was alone and again told her what he wanted her to do. The following testimony as to that occasion and subsequent events is pertinent:
Q. When he came over, what did he do?
A. I opened the door, and he just kind of brushed past me and walked in and sat down. And he had the book, the textbook with him. And he told me again what he wanted me to do.
... .
Q. What happened?
A. He started talking about his wife again. And he said he was sorry people wouldn't be able to understand our relationship.
Q. Did he say anything else?
A. Just how much he loved me.
Q. Did he do anything else?
A. Yes.
Q. What did he do?
A. He was kissing me again.
Q. How was he kissing you, [S.S.]?
A. French kiss, and he also kissed me on my face.
Q. Did he do anything else?
A. Yes.
Q. What did he do?
A. He had his hands on my breasts again and in between by legs.
Q. Did he touch you over your clothes or under your clothes?
A. At first over. And then he undid my shorts and put his hand under my shorts.
Q. Did he touch you over your underpants or under your underpants?
A. Under.
Q. How did he touch you there?
A. He put one of his fingers inside of me.
Q. How long did he do that?
A. A couple of minutes.
Q. Did he say anything to you when he was doing this?
A. He told me that this is kind of what it feels like to have sex.
Q. And what was your response to that?
A. I started crying.
... .
Q. Okay, [S.S.]. Tell us about the last time that the defendant came to visit you at your house in the summer of 1988.
... .
A. He started touching me again.
Q. How did he touch you?
A. On my breasts over and under my clothes and in between my legs over and *1360 under my clothes. And then he had me  he told me that he had to go further. And I got up off the couch and went to the other side of the room.
Q. Then what happened?
A. I started crying and he came to the other side of the room and picked me up.
... .
Q. What did he do then?
A. He carried me into my bedroom and laid me down on the floor.
... .
Q. Then what happened?
A. He just stared at me for I don't know how long. And I tried to get up and he pushed me back down. And he stood me up and undressed me.
... .
Q. Then what did he do?
A. He pulled back the covers on the bed and laid me down, and then he undressed himself and laid down next to me.
... .
Q. [S.S.], what, if anything, happened next?
A. He forced me to perform oral sex.
... .
Q. And what, if anything, happened next?
A. He began kissing my breasts, and he put his mouth between my legs.
Q. Anything else, [S.S.]?
A. Then he made me have intercourse with him.
... .
Q. When is the next time  what were you doing when he went in the bathroom?
A. I was just laying there for a few minutes.
Q. What were you doing?
A. Crying.
... .
As the tension built between appellant and S.S. during the beginning of the next school year, appellant, in October or November of 1988, according to S.S., called her out into the hall from their classroom, told her she was being a "bitch" and that he wanted her out of his class. After the junior high principal learned of this incident, S.S. later told another teacher that appellant had fondled her... . That teacher insisted that S.S. inform her parents.
Hallberg v. State, 621 So.2d 693, 695-98, 700 (Fla. 2d DCA 1993).

II. THE APPLICABLE LAW
The statute in issue, section 794.041, Florida Statutes (1987), provides in part:
(2) Any person who stands in a position of familial or custodial authority to a child 12 years of age or older but less than 18 years of age and who:
... .
(b) Engages in sexual activity with that child is guilty of a felony of the first degree... .
§ 794.041, Fla. Stat. (1987) (emphasis added).
The majority opinion interprets the phrase, "who stands in a position of ... custodial authority," as meaning "one having custody and control of another." Majority op. at 1358 (emphasis added). In other words, to satisfy the statute the authority figure must have actual custody and control of the child at the time the sexual activity takes place. The majority then extrapolates broadly: "[W]e find that a teacher, without any teaching responsibility or extracurricular activity supervisory authority over a child during a summer recess, is not in a position of custodial authority." Majority op. at 1355. From this, the majority concludes that because Hallberg was not S.S.'s teacher during the summer months when he had sex with her, he is innocent of violating the statute.
I disagree with this reasoning. If the legislature had intended the statute to apply only to those exercising actual custody and control over a child at the time of the sexual activity, it could easily have said so. Nowhere in the statute, however, is this requirement mentioned. Instead, the statute provides that it applies to anyone who stands in a position of custodial authority. It is the position of authority that the person occupies, *1361 not the exercise of custody and control, that triggers the statute. This to my mind is eminently reasonable since it is the position of power and trust, not the exercise of custody, that gives the abuser undue sway over a child's will.
Our children are encouraged  indeed, trained  from the time they are babes to obey preschool teachers, camp counselors, school teachers, coaches, scout leaders, and others who stand in a position of custodial authority. We encourage our children to trust these persons unreservedly in order for the persons to do their jobs well. Unfortunately, this renders our youth vulnerable to pedophiles such as Hallberg. I believe that the legislature enacted section 791.041 to insure against this vulnerability. Abuse of custodial authority  of trust  is the evil the statute was designed to address. Under certain circumstances a school teacher can violate this statute during summer recess.

III. CONCLUSION
I agree with the district court's conclusion that the statute was violated in the present case. It is undisputed that Hallberg stood in a position of custodial authority to S.S. during the school year immediately preceding the summer of 1988 and that he would resume that position immediately after the summer. His contact with her during the summer had been arranged when he was her teacher and related to activities when he would be her teacher again. Summer recess did nothing to change Hallberg's or S.S.'s assessment of their teacher-student relationship. I do not think we should. Under the circumstances of this case, the position of trust continued during the summer months, as noted by the district court:
The uncontradicted evidence shows that at the time of the offenses, S.S. had just concluded her eighth grade year during which appellant was her teacher and her advisor. Her father referred to appellant twice in his testimony as S.S.'s "mentor." S.S. was scheduled to have appellant as her history teacher again in the ninth grade. Appellant had arranged to have S.S. work with him and for him during the summer recess in preparation for the ninth grade Alpha history class. He had taken material for that preparation to her home. He was in her home alone with her on the day of the alleged offenses ostensibly to check on her progress in the preparation for the next school year.
Hallberg, 621 So.2d at 703. The conclusion is inescapable: Hallberg used his position as teacher to force S.S. to have sex with him during the summer months, and S.S. gave in to his demands because he was her teacher. The connection could not be more clear or direct.
I disagree with the majority's analysis on this point, and its broad holding. To my mind, the issue is simple: The statute is intended to protect Florida's children from those to whom they are most vulnerable.
HARDING, J., concurs.
NOTES
[1] Section 800.04, Fla. Stat. (1987), provides:

Any person who:
(1) Handles, fondles or makes an assault upon any child under the age of 16 years in a lewd, lascivious, or indecent manner;
(2) Commits an act defined as sexual battery under s. 794.011(1)(h) upon any child under the age of 16 years; or
(3) Knowingly commits any lewd or lascivious act in the presence of any child under the age of 16 years
without committing the crime of sexual battery, is guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Neither the victim's lack of chastity nor the victim's consent is a defense to the crime proscribed by this section.
[2] Section 794.041, Florida Statutes (1987), provides:

(1) For the purposes of this section, the term "sexual activity" means the oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object.
(2) Any person who stands in a position of familial or custodial authority to a child 12 years of age or older but less than 18 years of age and who:
(a) Solicits that child to engage in sexual activity is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(b) Engages in sexual activity with that child is guilty of a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(3) The willingness or consent of the child is not a defense to prosecution under this section.
[3] Cf. State v. Rawls, 649 So.2d 1350 (Fla. 1994) (no "familial or custodial authority" for a roomer).