IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

BRYAN SHANE TEET,

      Appellant,

v.

Case No. 5D21-735
LT Case No. 59-2018-CF-001252-A

STATE OF FLORIDA,

      Appellee.

_____/

Opinion filed April 14, 2022

Appeal from the Circuit Court
for Seminole County,
Marlene M. Alva, Judge.

Benjamin Wurtzel, of Wurtzel Law,
PLLC, Winter Park, for Appellant.

Ashley Moody, Attorney General,
Tallahassee, and Richard Alexander
Pallas, Jr., Assistant Attorney General,
Daytona Beach, for Appellee.

COHEN, J.

      Bryan Teet appeals the trial court's denial of his motion for judgment

of acquittal for one count of sexual battery on a child over 12 years of age

but less than 18 years of age by a person in familial or custodial authority, in violation of section 794.011(8)(b), Florida Statutes (2017). He argues, inter alia, that he was not in a position of custodial authority at the time of the alleged assault.[1] Because the events giving rise to the charged offense occurred away from the school premises and not in connection with a recognized school activity, we reverse.

Teet was charged with seven counts of sexual battery for events that allegedly occurred between April 2 and April 16, 2018. The allegations included acts of oral sex and intercourse. Two of the charged crimes transpired on April 16: count six alleged intercourse between Teet and the victim, while count seven alleged that he performed oral sex on the victim.

At the time of the charged offenses, the victim was 17 years old, a junior in high school, and enrolled in the JROTC program there. Teet was her JROTC classroom instructor, and he supervised JROTC after-school and community service activities. The evidence established that over the course of the victim's junior year, she and Teet developed a close relationship and he acted as her mentor. With his wife's knowledge and

---

[1] The trial court struck "familial authority" from the jury instructions based on the lack of evidence supporting that aspect of the charge.

consent, Teet provided the victim with gifts as well as cash for academic performance.

The victim testified that she and Teet spent time alone in his office discussing personal issues, including Teet's marriage. Although all JROTC cadets who obtained the rank of officer received Teet's cell phone number, the victim alleged that her calls and text messages with him became sexual in nature and included exchanging nude photographs. However, no such photographs or text messages were recovered from their phones.

On two occasions, with express permission from the victim's mother to do so, Teet provided the victim with rides home from JROTC after-school activities.[2] The victim testified that on several occasions during the first and second week of April, after providing her a ride home, Teet entered her residence and the two engaged in oral sex and intercourse.

On April 16, Teet again drove the victim home after JROTC practice, but on this occasion it is undisputed that neither the mother nor the grandmother had granted Teet authority to do so. The victim testified that, after Teet drove her home that day, she invited him in and, again, they had intercourse and oral sex. They were interrupted by a family friend knocking

---

[2] The victim lived at her grandmother's residence to remain in the school zone, but her mother lived nearby and managed her daughter's transportation from school.

3

on the door. According to that witness, the victim answered the door clothed only in a towel and another witness observed a white, middle-aged man exit the residence from the side door wearing only pants and carrying his shirt and shoes.[3]

When confronted by her mother and law enforcement not long after this incident, the victim initially denied that any sexual activity had occurred but later admitted to having engaged in sexual acts with Teet and agreed to a sexual assault examination. No identifiable male DNA was recovered, but forensic testimony indicated that the use of a condom, as well as the victim having showered and brushed her teeth prior to the exam, could have compromised such evidence.

A detective interviewed Teet, which was recorded and played for the jury. Although advised that he was under no obligation to speak, Teet voluntarily answered questions. When the detective told Teet that the victim reported they had exchanged nude photographs, Teet denied the existence of such pictures and steadfastly denied any inappropriate sexual contact with the victim. He admitted driving the victim home on April 16. He also admitted

---

[3] The victim testified that she and Teet had subsequent phone calls to align their stories for that evening, but no such record was discovered on her phone.

4

to entering the home and exiting through the side door after the family friend knocked, as the victim had asked him to leave surreptitiously because she was not supposed to have anyone in the house while the grandmother was away. There was no evidence that Teet was permitted in the home while no other adult was there.

The sexual assault examination did not reveal identifiable male DNA, and law enforcement made no effort to collect any evidence from the grandmother's residence or the victim's clothing. As a result, there was no forensic evidence linking Teet to a sexual liaison with the victim. The only physical evidence consisted of photographs taken during the examination, which reflected bruising and a vaginal laceration on the hymen consistent with sexual activity. The State's medical expert, Dr. Neil Silverstein, testified that the scientific literature established that bruises cannot be aged. Despite that testimony, he also stated, "Yeah. I mean, those were bright red, purple bruise [sic] which looked acute, meaning it most likely happened as she said, within twenty-four to forty-eight hours."

The defense presented the expert testimony of Dr. William Anderson, who agreed that bruises cannot be aged but stated that he was testifying to the age of the vaginal laceration. Dr. Anderson asserted that the laceration was less than 12 hours old, which was inconsistent with the time frame at

issue, as it was undisputed that the alleged intercourse transpired approximately 24 hours prior to the examination.

The jury acquitted Teet of six out of the seven charges—including the count alleging oral sex on April 16—but convicted Teet of the intercourse charge for that date. This appeal followed.

While Teet raises a number of issues on appeal, we need address only one: whether the evidence viewed in the light most favorable to the State was sufficient to prove that Teet was in a position of custodial authority at the time of the alleged intercourse on April 16. Teet argues that he did not hold that authority because he had not been granted parental permission to drive the victim home, enter, and remain in her residence; and the offense did not occur on school property or in connection with an extra-curricular activity. The State responds that the necessary nexus was established because the offense occurred during the school year and after Teet had provided the victim with a ride home directly after a school activity that he supervised.

Both parties ground their arguments upon the Florida Supreme Court's holding in Hallberg v. State, 649 So. 2d 1355 (Fla. 1994), where the central issue was whether a teacher held a position of custodial authority at the time of the sexual battery. In that case, Hallberg was the victim's teacher and

6

sponsored the after-school club of which she was a member. Id. at 1355. During the victim's eighth grade year, she and Hallberg developed "a close personal relationship." Id. at 1355–56. Over summer break, and ostensibly to give the victim materials to review for an upcoming history project, Hallberg repeatedly went to the victim's home and entered when only the victim was there. Id. at 1356. During these visits, various sexual acts occurred. Id. Although the victim's parents were generally aware that Hallberg was working on a project with the victim, his visits to the victim's home were not scheduled with the parents' knowledge or consent. Id.

The Court found that Hallberg's status as a teacher was insufficient to establish custodial authority when the liaisons "were so far removed from both the time and place of his responsibilities as a teacher," particularly when employing a strict construction of "custodial authority" as required by section 775.021(1). Id. at 1357–58 (quoting Hallberg v. State, 621 So. 2d 693, 705–06 (Fla. 2d DCA 1993) (Altenbernd, J., concurring in part and dissenting in part)). In reaching this determination, the Court rejected the State's three arguments: 1) Hallberg's status as the victim's teacher placed him in loco parentis; 2) the victim's parents' implied consent to his visits vested him with custodial status; and 3) the close relationship between Hallberg and the victim conferred custodial authority. Id. at 1357–58. The Court continued by

7

identifying factors to consider when determining if a teacher stands in a position of custodial authority: whether the events occurred during the school year, on the school premises, or in connection with activities of a recognized teaching or extracurricular event. Id. at 1357. We do not view that list as exhaustive.

Here, the State relies heavily upon the fact that, unlike in Hallberg, these events occurred during the school year. However, that is just one of several factors to be considered and is not in and of itself determinative. The remaining factors in the instant case mitigate against a finding that Teet was in a position of custodial authority. Most pertinent is the fact that neither the victim's mother nor grandmother consented to Teet giving the victim a ride home or entering the grandmother's residence on April 16. Accordingly, neither the victim's mother nor grandmother ceded custodial authority to Teet at the time of the offense charged in count six.[4]

---

[4] The lack of parental consent distinguishes the instant case from our decision in Collins v. State, 496 So. 2d 997, 999 (Fla. 5th DCA 1986), where we noted that the victim had ridden in the defendant's truck many times when listing facts contributing to custodial authority. In that case, we also noted that "the defendant had daily contact with the victim's mother, and, in fact, the mother of the child knew, and approved, that the child was in the care of the defendant on the day the crime was committed." Id.

Moreover, as in Hallberg, the offense in the instant case did not occur on school premises, during school hours, or during a school-related or sanctioned extra-curricular event. Instead, the offense occurred at the private residence of the victim's grandmother, after school hours, and after the JROTC practice had ended. Transporting the victim home was not part and parcel of that event. The State contends that, because Teet supervised the extra-curricular activity, driving the victim home afterward provides a sufficient connection between a recognized school activity and the sexual acts inside the household, but provides no authority for this contention.[5]

This Court has addressed the application of the terms "familial or custodial authority" as they relate to sexual battery prosecutions, albeit not in the context of a teacher-student relationship. In Pozek v. State, 803 So. 2d 768, 770 (Fla. 5th DCA 2001), this Court found that the defendant stood in a position of familial or custodial authority over the victim at the time of the offenses when the victim was living with the defendant, and the defendant was providing the victim with food and clothing as well as taking her to school and meetings. This Court noted the Florida Supreme Court's definition of

---

[5] It is noteworthy that, although Hallberg's offenses occurred during summer recess, they transpired after he appeared at the victim's home with educational materials in hand, ostensibly to work on a school-related project—and yet custodial authority still was not found. Hallberg, 649 So. 2d at 1356.

9

custody as "one having custody and control of another." Id. (quoting Hallberg, 649 So. 2d at 1357). "A 'custodian' is someone who has custody of another. 'Custody' connotes a duty or obligation to care for the other. Concerning a child, it usually implies that the person has some responsibilities in loco parentis." Id. (quoting Hallberg, 649 So. 2d at 1357). "[T]he term 'custodial,' absent a statutory definition, must be construed in accordance with the commonly understood definition as one having custody and control of another." Id. (quoting Hallberg, 649 So. 2d at 1357); see also Woolman v. State, 292 So. 3d 530, 536 (Fla. 2d DCA 2020) (noting that "custodial authority" is conjunctive rather than disjunctive, requiring both custody and control).[6]

Additionally, in Oliver v. State, 977 So. 2d 673 (Fla. 5th DCA 2008), this Court found that the defendant stood in a position of familial or custodial authority over the victims at the time of the offenses. There, the defendant and his wife became "very close" with the victims' family. Id. at 676. The families commonly spent weekends and vacations together, the victims babysat for the defendant, and they frequently stayed overnight at his house.

---

[6] Accordingly, the trial court granted Teet's request for a jury instruction defining "custodial authority" as both custody and control, and the State neither objected nor challenged that instruction on appeal.

Id. In finding that the defendant was in a position of custodial authority at the time of the offenses, this Court emphasized the fact that all the sexual acts occurred at his home at times where the victims' mother was aware that they were there, had given permission to do so, and entrusted her children to the care of the defendant. Id. at 676–77.

Also instructive is Crews v. State, 130 So. 3d 698 (Fla. 1st DCA 2013). In that case, the defendant was charged with the same offense as Teet; the defendant, a teacher at the victim's school, and the victim became close during the victim's seventh grade year. Id. at 700. The defendant took the victim to a car show, then to a storage shed where he played pornographic videos and had sex toys. Id. The defendant began driving the victim to and from school, which continued during the victim's eighth grade year, while the defendant was one of his teachers. Id. The victim lived with his grandparents, who were also his guardians. Id. Although generally aware of the defendant, the grandparents distrusted him and did not grant him any authority over the victim. Id. The sexual acts giving rise to the charge occurred at the defendant's residence during the summer between eighth and ninth grades or early in the victim's ninth grade year, when the defendant was no longer his teacher. Id. The First District found that because the sexual acts occurred away from school, at a time when the defendant was not the victim's

11

classroom teacher, and were unconnected to a school activity, reversal was required under <u>Hallberg</u>. <u>Id.</u> at 701.

Finally, the critical term at issue here, "custodial authority," has not been clearly defined by statute or rule and, as such, the rule of lenity applies. <u>Gonzalez v. State</u>, 941 So. 2d 1226, 1229 (Fla. 5th DCA 2006) ("If the legislature fails to clearly and unambiguously define a crime, 'the courts must resolve any doubt as to legislative intent by application of the rule of lenity.'" (citation omitted)). "According to the rules of statutory construction, this means that penal statutes should be strictly construed, and 'when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.'" <u>Id.</u> (citing § 775.021, Fla. Stat. (2005)); <u>see also</u> <u>Hallberg</u>, 649 So. 2d at 1358. Accordingly, given the narrow purview granted for interpretation of this term, Teet did not hold custodial authority at the time of the offense based on the evidence before us.

This result was self-inflicted by the State's decision to charge Teet as it did. There were other offenses available that did not involve the element of custodial authority. Additionally, the State chose not to request a jury instruction on any lesser included charges other than simple battery.[7]

---

[7] At oral argument, the State conceded the inapplicability of any lesser included offenses.

Because there is insufficient evidence that Teet was acting in loco parentis at the time of the charged offense, we are compelled to reverse.[8]

REVERSED.

LAMBERT, C.J., and EVANDER, JJ., concur.

---

[8] We note that had Teet been charged with the same conduct today, pursuant to section 800.101, Florida Statutes (2018), custodial authority would not have been an issue.