[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13455

Non-Argument Calendar

_____

DUANE E. ADAMS,

Petitioner-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:20-cv-00330-JLB-PRL

_____

Before ROSENBAUM, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Duane Adams, a Florida prisoner serving a 960-month sentence followed by 10 years of sexual offender probation for multiple sexual offenses involving a minor, appeals the district court's order denying his *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. A judge of this Court granted Adams a certificate of appealability ("COA") on two issues. First, "Whether the district court erred in denying Adams' claim that his trial counsel was ineffective for failing to request that the jury receive an instruction on the definition of familial authority." Second, "Whether the district court erred in denying Adams' claim that the trial court erred in denying his motion for a judgment of acquittal."[1]

**I.**

---

[1] Adams also argues that the district court erred in denying a claim for which he has not been issued a COA—namely, that the state trial court lacked jurisdiction to proceed with his criminal proceedings without a valid charging document. We will not consider Adams's challenge that the district court erred in denying his claim that the state trial court lacked jurisdiction to proceed with his criminal proceedings because this issue is not specified in the COA. 28 U.S.C. § 2253(c)(1)(A) ("Unless a circuit justice or judge issues a [COA], an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court.").

In reviewing a district court's denial of a § 2254 petition, "[w]e review the district court's conclusions on legal questions and mixed questions of law and fact *de novo* and its factual findings for clear error." *Mason v. Allen*, 605 F.3d 1114, 1118 (11th Cir. 2010). "An ineffective assistance of counsel claim is a mixed question of law and fact that [we] review[] *de novo*." *Jones v. Campbell*, 436 F.3d 1285, 1292 (11th Cir. 2006). Our review of questions decided on the merits in state court is limited by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *Mason*, 605 F.3d at 1118. Under AEDPA, we cannot grant habeas relief to a petitioner challenging a state court's findings "unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Mason*, 605 F.3d at 1119.

When a state court does not explain the reasons for its decision, we must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning" unless the State rebuts this presumption. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

The Sixth Amendment's guarantee that a criminal defendant "shall . . . have the Assistance of Counsel for his defen[s]e"

guarantees a right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *see* U.S. Const. amend. VI. Ineffective assistance of counsel claims are governed by the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), under which a petitioner "must show that (1) his counsel's performance was deficient and fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 954 (11th Cir. 2016) (quotation marks omitted).

For the deficient performance prong, we ask what a reasonably competent attorney would have done in the circumstances facing the attorney whose performance the petitioner is challenging. *Newland v. Hall*, 527 F.3d 1162, 1184, 1187 (11th Cir. 2008). There is a presumption in favor of counsel's reasonableness which a petitioner can overcome by showing "that no competent counsel would have taken the action that [the] counsel [took]." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*). Counsel is afforded "wide latitude . . . in making tactical decisions," and "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotation marks omitted). We will deny an ineffective assistance claim if "we can conceive of a reasonable motivation for counsel's actions." *Gordon v. United States*, 518 F.3d 1291, 1302 (11th Cir. 2008).

For the prejudice prong, the petitioner must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In 2014, Florida's sexual battery statute provided that, "[w]ithout regard to the willingness or consent of the victim, . . . a person who is in a position of familial or custodial authority to a person less than 18 years of age and who . . . [e]ngages in any act with that person while the person is 12 years of age or older but younger than 18 years of age which constitutes sexual battery . . . commits a felony of the first degree." Fla. Stat. § 794.011(8)(b) (2014). The statute defined "sexual battery" as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object." *Id.* § 794.011(1)(h).

In interpreting "familial relationship" in the sexual battery context, the Florida Supreme Court has stated the following:

> [T]he determination of whether a familial relationship exists must be done on a case-by-case basis. Consanguinity and affinity are strong indicia of a familial relationship but are not necessary. Also, the defendant and victim need not reside in the same home. The relationship must be one in which there is a recognizable bond of trust with the defendant, similar to the bond that develops between a child and her grandfather, uncle, or guardian. Where an individual legitimately exercises parental-type authority over a child

> or maintains custody of a child on a regular basis, a
> familial relationship may exist for purposes of the ad-
> missibility of collateral crimes evidence . . . .

*State v. Rawls*, 649 So. 2d 1350, 1353 (Fla. 1994) (footnote omitted), *superseded on other grounds by statute*, Fla. Stat. § 90.404(2)(b), *as recognized in McLean v. State*, 934 So. 2d 1248, 1259 (Fla. 2006); *see also Oliver v. State*, 977 So. 2d 673, 676 (Fla. Dist. Ct. App. 2008).

In *Rawls*, the Florida Supreme Court ruled that, at the time the defendant's illicit conduct was discovered, his relationship with the victim was not familial because he was not related to the victim, he did not exercise any custodial authority or supervisory authority over the victim, there was no evidence that the victim looked upon the defendant as a member of the family, and, while the defendant lived in the victim's house, "he was essentially a boarder." 649 So. 2d at 1353. In *Oliver*, by contrast, the Florida Fifth District Court of Appeal held that a rational jury could conclude that the defendant was in a position of familial authority over two sexual battery victims where the defendant became close with the victims' family, the defendant worked as a soccer coach of one of the victims, the victims often stayed overnight at the defendant's house, the victims trusted and confided in the defendant, and the victims saw the defendant as a father figure. 977 So. 2d at 676–77.

Here, as the district court found, the state postconviction court's decision—which this Court reviews as the last explained decision after "look[ing] through" the Fifth District Court of Appeal's unexplained affirmance—that Adams's trial counsel was not

deficient in failing to request that the trial court give the definition of "familial relationship" from *Rawls* and *Oliver* was neither "contrary to, [n]or involved an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d); *Wilson*, 584 U.S. at 125. At trial, there was substantial evidence indicating that Adams had a "recognizable bond of trust" with B.G. analogous to that between a child and an uncle or guardian: B.G. met Adams after she had moved away from her stepfather, with whom she was close; B.G. saw Adams as a "figure that [she] could look up to" and "wanted to be like"; B.G. trusted and loved Adams "[m]ore than anything"; Adams bought B.G. gifts, including a cell phone, a piano, and a guitar; Adams drove B.G. to school once or twice per week; Adams taught B.G. how to drive; and Adams ironed B.G.'s school uniforms that she kept at his apartment. *See Rawls*, 649 So. 2d at 1353; Oliver, 977 So. 2d at 676.

Considering this evidence, reasonably competent defense counsel could have believed it would be more likely that the jury would find that Adams had familial authority over B.G. if it received the full "familial relationship" definition from *Rawls* and *Oliver* than if the parties simply offered competing interpretations of familial authority in their closing arguments. And this is the strategy that Adams's trial counsel chose: it allowed the State to offer an interpretation of familial authority based on a "recognizable bond of trust" in its closing argument and then defense counsel disputed this interpretation in his own closing argument: "[A]re they related? Are they a family? . . . Are they even stepfather? . . . [D]oes she live with him as father and daughter? . . . He's not [her] uncle,

he's not like [her] uncle, not a father, not like a father, has no authority . . . over her as a parent or anyone acting as a parent". Given the wide latitude afforded to defense counsel in making such tactical decisions, Adams has failed to "overcome the presumption that, under the circumstances," his counsel's choice to avoid giving the jury the definition of familial relationship from *Rawls* and *Oliver* "might be considered sound trial strategy." *See Strickland*, 466 U.S. at 689.

Thus, the state postconviction court did not reach a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law" in finding that Adams's trial counsel was not deficient in failing to request that the trial court give the full definition of familial authority from *Rawls* and *Oliver*. *See* 28 U.S.C. § 2254(d). Adams's ineffective assistance of counsel claim therefore fails.

## II.

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1). To properly exhaust a claim, a petitioner "must fairly present every issue in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010). To this end, he "must make the state court aware that the claims asserted present federal constitutional issues." *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

While "a petitioner need not use magic words or talismanic phrases to present his federal claim to the state courts," he "must have put the state court on notice that he intended to raise a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015). For example, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Snowden*, 135 F.3d at 735 (quotation marks omitted).

We have ruled that a § 2254 petitioner failed to exhaust his federal sufficiency-of-the-evidence claim merely by presenting a sufficiency claim under Florida law. *Preston*, 785 F.3d at 456–57. In *Preston*, the petitioner, who had been convicted of first-degree murder, argued on direct appeal that the evidence at his trial was insufficient to prove premeditation beyond a reasonable doubt because it was merely circumstantial. *Id.* at 453. In his initial brief before the Florida Supreme Court, the petitioner did not cite a federal case or mention the Due Process Clause, and "relied instead on a panoply of Florida cases discussing the element of premeditation, as defined by state law." *Id.* at 458–59. As such, the State "did not refer to any federal cases or federal constitutional provisions" in its response, the petitioner's reply brief did not refer to federal law, and the Florida Supreme Court relied exclusively on Florida cases and Florida law in resolving the petitioner's challenge. *Id.* at 459. For these reasons, we held that the petitioner had failed to exhaust his federal claim. *Id.* We further noted that it was "not at all clear that a petitioner can exhaust a federal claim by raising an analogous state claim," but ultimately declined to resolve this question since

the Florida standard for assessing a sufficiency of the evidence claim differed from the federal standard in cases turning on circumstantial evidence. *Id.* at 460–61.

Where a federal habeas petition presents both exhausted and unexhausted claims, a district court must ordinarily dismiss the petition without prejudice to allow the defendant to resubmit only the exhausted claims or to exhaust all claims. *Snowden*, 135 F.3d at 736. "But, when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." *Id.* (quoting *Harris v. Reed*, 489 U.S. 255, 270 (1989) (O'Connor, J., concurring)). A habeas petitioner may overcome a procedural bar by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law" or by "demonstrat[ing] that failure to consider the claims [would] result in a fundamental miscarriage of justice." *Muhammad v. Sec'y, Dep't of Corr.*, 554 F.3d 949, 957 (11th Cir. 2009) (quotation marks omitted). Under Florida law, "[m]atters which were raised on appeal and decided adversely to the movant" and matters "which could have been presented on appeal" cannot later be presented in a postconviction motion. *McCrae v. State*, 437 So. 2d 1388, 1390 (Fla. 1983).

"After the enactment of AEDPA, whether the State's failure to raise a procedural bar defense waives it depends on the basis of the defense." *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1339 (11th

Cir. 2009). "If the procedural bar defense arises from the petitioner's failure to raise the claim at all and thereby exhaust state remedies, that defense cannot be waived implicitly by the State's failure to assert it." *Id.*; *see* 28 U.S.C. § 2254(b)(3). Additionally, "[COAs] do not limit our obligation to consider whether other parts of the governing legal analysis would necessarily cause a claim to fail on the record before us." *Bilotti v. Fla. Dep't of Corr.*, 133 F.4th 1320, 1323 (11th Cir. 2025).

The Due Process Clause protects defendants from deprivations of their liberty in the absence of sufficient proof, which is "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). The federal standard of review for sufficiency-of-the-evidence challenges is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The Florida Supreme Court has defined the standard of review for sufficiency-of-the-evidence challenges under Florida law as whether, "after viewing the evidence in a light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt." *Reynolds v. State*, 934 So. 2d 1128, 1145 (Fla. 2006).

The Florida Supreme Court has ruled that the term "custodial authority" in the sexual battery context "must be construed in accordance with the commonly understood definition as one

12                Opinion of the Court                23-13455

having custody and control of another." *Hallberg v. State*, 649 So. 2d 1355, 1358 (Fla. 1994). The Florida Supreme Court has endorsed the notion that custodial authority of a child "usually implies that the person has some responsibilities *in loco parentis*" and "that teachers are not, by reason of their chosen profession, custodians of their students at all times, particularly when school is recessed for the summer." *Id.* at 1357 (quotation omitted). In *Hallberg*, for example, the Florida Supreme Court held that a defendant, who was the victim's teacher and had formed a close personal relationship with her during the regular school year, was not in a position of custodial authority over the victim where the defendant committed the acts of sexual battery at the victim's home in the summer, after school had recessed. *Id.* at 1355–58. There, while the victim's parents were generally aware that the defendant wanted to help the victim with a history project over the summer, the defendant's visits to the victim's home were not scheduled with the parents' knowledge or consent. *Id.* at 1356. The Florida Supreme Court ruled that the victim's parents did not place the defendant in custodial control and authority over their daughter. *Id.* at 1357–58.

Here, as an initial matter, the State is correct in arguing that Adams's challenge to the trial court's denial of his motion for a judgment of acquittal as to Count One is unexhausted. *See O'Sullivan*, 526 U.S. at 842; 28 U.S.C. § 2254(b)(1). In his direct appeal to the Fifth District Court of Appeal, Adams limited his challenge to the denial of his motion for a judgment of acquittal to Counts Two, Three, and Four. Because Adams never clearly presented a challenge to the trial court's denial of his judgment of acquittal as to

Count One in any of his postconviction proceedings, we dismiss his claim as to Count One as unexhausted and procedurally barred. *See Ward*, 592 F.3d at 1156.

The State is also very likely correct in arguing that Adams's challenge to the trial court's denial of his motion for a judgment of acquittal as to Counts Two through Four is procedurally barred. *See O'Sullivan*, 526 U.S. at 842; 28 U.S.C. § 2254(b)(1). In his direct appeal to the Fifth District Court of Appeal, Adams did not ground his challenge to the district court's denial of his judgment of acquittal in federal law or present it as a federal claim. *Snowden*, 135 F.3d at 735. Instead, similar to the petitioner in *Preston*, Adams cited exclusively to Florida cases and never cited a federal case or argued that his due process rights had been violated. *Preston*, 785 F.3d at 456–57. While Adams did cite *Reynolds*, which defined Florida's sufficiency-of-the-evidence standard nearly identically to the federal *Jackson* standard, this Court has expressed doubt that presenting a sufficiency-of-the-evidence challenge under Florida law is sufficient to present a sufficiency-of-the-evidence challenge under federal law. *See Preston*, 785 F.3d at 459–60. And while the State did not raise its AEDPA procedural defense until appeal, the State could not implicitly waive this defense merely by failing to assert it in the district court. *See Smith*, 572 F.3d at 1339. Nor does this Court's issuance of a COA on the merits of Adams's claim preclude its ability to analyze whether the claim fails under other parts of the governing legal analysis. *See Bilotti*, 133 F.4th at 1323.

Normally, this Court would dismiss Adams's petition without prejudice to allow him to exhaust his claims or resubmit only his exhausted claims. *See Snowden*, 135 F.3d at 736. In this case, however, this would be a fruitless exercise: Adams would be barred from exhausting these claims under Florida law since his challenge to the trial court's denial of his motion for a judgment of acquittal was already decided adversely to him on direct appeal and "could have been presented" as a federal claim. *See McCrae*, 437 So. 2d at 1390. And because Adams has neither shown cause and prejudice nor a fundamental miscarriage of justice concerning his procedural default, *see Muhammad*, 554 F.3d at 957, Adams's challenge to the trial court's denial of his motion for a judgment of acquittal as to Counts Two through Four (as well as Count One) is likely procedurally barred. *See O'Sullivan*, 526 U.S. at 842.

In any event, even assuming Adams's challenge is not procedurally barred, it nonetheless fails on its merits. The focus of Adams's argument in support of his motion for judgment of acquittal is that there was insufficient evidence of the familial or custodial element. As discussed in Issue I, there was substantial evidence by which a rational trier of fact could have found beyond a reasonable doubt that Adams had a "recognizable bond of trust" with B.G. analogous to that between a child and an uncle or guardian: B.G. met Adams after she had moved away from her stepfather, with whom she was close; B.G. saw Adams as a "figure that [she] could look up to" and "wanted to be like"; B.G. trusted and loved Adams "[m]ore than anything"; Adams bought B.G. gifts, including a cell phone, a piano, and a guitar; Adams drove B.G. to school once or

twice per week; Adams taught B.G. how to drive; and Adams ironed school B.G.'s school uniforms that she kept at his apartment. *See Rawls*, 649 So. 2d at 1353; *Oliver*, 977 So. 2d at 676. Based on this evidence, a rational trier of fact could have concluded beyond a reasonable doubt that Adams committed the charged acts of sexual battery against B.G. when he was in a position of familial authority over her under Florida law. *See Jackson*, 443 U.S. at 319; *Rawls*, 649 So. 2d at 1353; *Oliver*, 977 So. 2d at 676.

There was also substantial evidence by which a rational trier of fact could have concluded beyond a reasonable doubt that Adams committed the charged acts of sexual battery against B.G. while acting in loco parentis, and not solely because he was her teacher: Adams was B.G.'s orienteering coach and zero period (homeroom) teacher; Adams and B.G. would stay together in hotels for orienteering events without the rest of the team; Adams transported B.G. to his apartment and had sex with B.G. while her mother thought she was at school; and Adams altered the dates on consent forms signed by B.G.'s mother for orienteering events to give him and B.G. extra time together without the rest of the team. Given this evidence, a rational trier of fact could have found beyond a reasonable doubt that Adams committed sexual battery against B.G. when he was in a position of custodial authority over her under Florida law. *See Jackson*, 443 U.S. at 319; Hallberg, 649 So. 2d at 1357–58.

For the foregoing reasons, the decision of the district court is

16                          Opinion of the Court                          23-13455

**AFFIRMED.**